**HARRIS COUNTY, Texas, Petitioner,**

v.

**Michael Curtis DILLARD
et al., Respondents.**

**No. D–3293.**

Supreme Court of Texas.

Jan. 5, 1994.

---

Frank E. Sanders and Mike Driscoll, Houston, for petitioner.

Merry Miller, Houston, for respondents.

HECHT, Justice.

The Texas Tort Claims Act waives sovereign immunity for certain actions of governmental employees. TEX.CIV.PRAC. & REM. CODE § 101.021(1). The Act defines an employee as "a person, including an officer or agent, who is in the paid service of a governmental unit". *Id.* § 101.001(1). The sole issue in this case is whether a governmental unit is liable for the actions of a person who acts in its behalf but is not a paid employee. We hold that it is not and reverse the judgment of the court of appeals. 841 S.W.2d 552.

James Earl Skeen, a Harris County reserve deputy sheriff, and a female companion spent several hours drinking beer at a bar one Saturday night. While they were driving home very early Sunday morning, a car passed Skeen at what he considered to be an unsafe speed. He pursued the car to get its license plate number, and at the same time, reached down to turn on his radio to alert other law enforcement officials. When he looked back up, he saw another car stopped in front of him and swerved to avoid a collision. As a result, Skeen's vehicle spun out of control, crossed four lanes of traffic, and hit an oncoming car head-on. The driver of that car, Stephanie Hunold, was severely injured, and a passenger, Lila Jean Dillard, was killed. Skeen was found to have been legally intoxicated and was later convicted of voluntary manslaughter.

Dillard's statutory beneficiaries, and Hunold, sued Harris County, alleging that it was liable for Skeen's conduct. Over the County's objection, the trial court instructed the jury that the term "employee" included a volunteer. Based upon a verdict that Skeen was negligent, the trial court rendered judgment against the County. The court of appeals affirmed.

There is no dispute that Skeen was not in the paid service of Harris County at the time of the accident. He was a volunteer reserve deputy subject to being called into service. Skeen was therefore not an "employee", within the meaning of the Tort Claims Act, for whose conduct Harris County was liable. TEX.CIV.PRAC. & REM.CODE § 101.001. To reach the contrary conclusion, the court of appeals relied upon two cases. In one, *El Paso Laundry Co. v. Gonzales*, 36 S.W.2d 793 (Tex.Civ.App.—El Paso 1931, writ dism'd), a volunteer worker in a private business was found not to be an employee. *El Paso Laundry* does not involve the statutory definition which governs here.[1] In the second case cited by the court of appeals, *Smith v. University of Texas*, 664 S.W.2d 180 (Tex. App.—Austin 1984, writ ref'd n.r.e.), liability was predicated on the actions of a paid university employee who supervised volunteers, and not on the actions of the volunteers themselves. Neither *Smith* nor any other authority permits the plain language of the Tort Claims Act to be disregarded.[2]

---

1. *El Paso Laundry* was an action by an employee against his employer for injuries suffered by the employee's son while the son was on the employer's premises for the purpose of taking his father's lunch to him. The employer claimed in defense that the son was also an employee and therefore limited in his recovery to worker's compensation. The jury found that the son was not an employee. The court of appeals upheld this jury finding. The court discussed the factors for determining whether an employment relationship exists. It did not, as we have said, address in any way the statutory definition which controls the present case. The court held that because the employer had accepted the benefits

of the son's presence, the son was an *invitee*, not that he was an *employee*. 36 S.W.2d at 795.

2. JUSTICE SPECTOR's dissent is ambivalent about the importance of *Smith* to the present case. At first, the dissent claims that *Smith* provides plaintiffs' arguments, "a reasonably strong footing", *post* at 169; in the end, the dissent acquiesces in the view that *Smith* is "erroneous", *post* at 171.

The truth is, *Smith* is almost entirely irrelevant. In that case, Smith, a volunteer official for a University of Texas shot-put competition, was injured by a shot-put thrown when he was not watching. Smith sued the University. He

Plaintiffs argue that governmental units *should* be liable for the actions of people like Skeen, even if they do not come within the statutory definition of "employee". They also cite the definition of "employee" set out in §. 102.001 of the TEXAS CIVIL PRACTICE & REMEDIES CODE. That provision, however, is not part of the Texas Tort Claims Act, Chapter 101, but of Chapter 102. Chapter 102 grants local governments limited permission to pay actual damages awarded, not against itself, but against one of its employees. The definition of employees for purposes of the waiver of immunity in the Tort Claims Act, however, is set out in section 101.001(1).

We have repeatedly held that the extent of waiver of governmental immunity is a matter for the Legislature to determine. *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813–14 (Tex.), *cert. denied*, —— U.S. ——, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993); *State Dept. of Highways & Public Transp. v. Dopyera*, 834 S.W.2d 50, 54 (Tex.), *cert. denied*, —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 567 (1992); *LeLeaux v. Hamshire—Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992); *Mount Pleasant Indep. Sch. Dist. v. Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). To accept plaintiff's argument would extend the waiver further than the Act provides, something which we will not do.[3]

We hold that plaintiffs' action against Harris County is barred by governmental immunity.[4] Accordingly, the judgments of the trial court and court of appeals are reversed, and judgment is rendered that plaintiffs take nothing against Harris County.

PHILLIPS, C.J., and GONZALEZ, HIGHTOWER, CORNYN and ENOCH, JJ., join.

GAMMAGE, J., issued a dissenting opinion, in which DOGGETT, J., joins.

SPECTOR, J., issued a dissenting opinion.

Justice GAMMAGE, joined by Justice DOGGETT, dissenting.

The majority holds that a volunteer reserve deputy sheriff whom the county appoints to carry out law enforcement duties, who carries all the devices and emblems of a law enforcement officer, and who answers calls in the same manner as any police officer is not an "employee" for purposes of the Texas Tort Claims Act. Today's decision means that a county is not liable for the negligent actions of a person who functions as its agent or employee but does not receive a paycheck, thereby creating a legal anomaly that holds government to a lower standard of responsibility than it has when it must pay for services. Because I believe that Texas law imposes liability in cases of such unpaid agents, I dissent.

---

blamed Drolla, the head official for the competition, also a volunteer, for allowing the shot to be thrown when it was. The University obtained a summary judgment on the ground that Drolla was not its "employee" as defined by the Tort Claims Act. But the court of appeals observed that Smith also blamed Price, the University's head track coach, for failing to supervise the shot-put event. Since there was no question that Price was an employee of the University, the court of appeals reversed the summary judgment.

Unlike Smith, plaintiffs in the present case do not complain of the actions of any employee of Harris County. The dissent acknowledges this fact, arguing only that they *could have*. Hence, the sole relevance of *Smith:* to illustrate what plaintiffs might have claimed but didn't. Assuming *Smith* was rightly decided—an issue on which we venture no opinion—it provides no support for plaintiffs' claims in the present case.

3. The dissenting opinions do not dispute that the statutory definition of "employee" is plain and that its application in this case is clear. The dissents' protest that the definition leads to wrong results reflects a view of governmental immunity not shared by the Legislature.

4. JUSTICE SPECTOR's dissent would remand the case to allow plaintiffs to plead a different claim. The possibility that a party could have pleaded a viable cause of action is not ordinarily reason to reverse a judgment correctly disposing of the claims the party did plead. The dissent calls the Court's decision "unfair". *Post* at 169. It is not; but it would be unfair and unjust to Harris County, having rightly prevailed on the claims asserted, to be required to defend against new claims on which the dissent thinks plaintiffs might have a better chance.

The Texas Tort Claims Act imposes liability on the state for the negligent acts of an agent appointed to carry out the duties of a paid state employee. *Smith v. University of Texas*, 664 S.W.2d 180, 190 (Tex.App.—Austin, 1984, writ ref'd n.r.e.); *see also* RESTATEMENT (2D) OF AGENCY § 225 (1956) ("One who volunteers without the agreement for or expectation of reward may be a servant of one accepting such services"). Furthermore, a volunteer has the same status as an employee under the Texas Tort Claims Act if the employer retains the right to direct the duties of the volunteer, has an interest in the work to be accomplished, accepts direct or incidental benefit from the volunteer's work, and has the right to fire or replace a volunteer. *Smith*, 664 S.W.2d at 190, citing *El Paso Laundry Co. v. Gonzales*, 36 S.W.2d 793, 795–96 (Tex.Civ.App.—El Paso 1931, writ dismissed); *see also* 53 Am.Jur.2d § 413 (one of the tests for a master-servant relationship as a basis for holding the master liable for a servant's wrongful acts is the power of the alleged master to select and discharge the servant).

The evidence is clear that the Harris County Sheriff's Department had the right to direct Deputy Skeen's duties, had the right to fire him, and accepted the benefit of his services. Although a volunteer, Skeen performed the same duties as paid employees and served at the direction of the Sheriff's Department. Because of these facts, the court of appeals was correct in holding that the County waived its immunity under the Texas Torts Claim Act. 841 S.W.2d at 555–56.

The majority misconstrues *Smith* by interpreting it as a pure negligent failure to supervise case. But the *Smith* opinion expressly and unequivocally states: "a claim under the [Tort Claims] Act can arise through the negligence of an agent duly appointed to carry out the duties of the *paid* state employee." 664 S.W.2d at 190.

Today's decision allows governmental entities to immunize themselves from liability by appointing volunteers to perform governmental functions. In no situation will the consequences be more grave than in circumstances involving volunteer peace officers. It is, in fact, the height of governmental irresponsibility to, with impunity, authorize unpaid agents to carry weapons, issue them badges and credentials, allow them to utilize police radios and "Kojak" lights for their private vehicles, and then turn them loose on an unsuspecting public to carry out the duties of paid police officers. It is apparent, however, that no matter how grossly these agents may abuse their accoutrements of official authority, today's majority opinion insulates the government from liability for their actions. Because I believe that the court of appeals was correct in holding that the Tort Claims Act covers this situation, I would affirm.

Justice SPECTOR, dissenting.

Upon reading the majority opinion, one might conclude that the meaning of the Texas Tort Claims Act is clear; that a governmental unit can never be liable for the actions of a volunteer; and that the arguments presented by the Plaintiffs have no basis in existing law. None of these conclusions are true. In fact, until today's opinion, the arguments presented by the Plaintiffs had a reasonably strong footing in Texas law. Because rendering judgment against the Plaintiffs under these circumstances is unfair, and because the majority opinion sweeps too broadly in foreclosing recovery, I dissent.

The Texas Tort Claims Act provides that a governmental unit may be held responsible, in certain situations, for the conduct of "an employee acting within his scope of employment." TEX.CIV.PRAC. & REM.CODE § 101.-021(1). The Act defines "employee" consistently with the term's ordinary meaning: an employee is one who is "in the paid service of a governmental unit by competent authority." *Id.*, § 101.001(1). A literal reading of the statute would thus prevent a volunteer from obtaining "employee" status.

Texas courts have previously held, however, that a volunteer worker, while not technically an "employee," has the same legal status as an employee whenever the employer has a right to direct the volunteer's duties, has an interest in the work to be accomplished, accepts the benefits of the volunteer's work, and has the right to fire or replace the volunteer. *Smith v. University*

*of Texas,* 664 S.W.2d 180, 190 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (citing *El Paso Laundry Co. v. Gonzales,* 36 S.W.2d 793, 795–96 (Tex.Civ.App.—El Paso 1931, writ dismissed)). The rationale underlying this view, as explained by the *El Paso Laundry* court, is straightforward: having acquiesced in and benefitted from the services of a worker, an employer should not be allowed to disclaim liability on the basis that the worker was only a volunteer. 36 S.W.2d at 795.[1]

The only previous case addressing a volunteer's status under the Tort Claims Act is *Smith v. University of Texas.* Rather than adhering solely to the literal definition of "employee" contained in section 101.001(1), the *Smith* court adopted the reasoning of the *El Paso Laundry* court, and concluded that a claim under the Tort Claims Act can arise through the negligence of a volunteer appointed to carry out the duties of a paid employee. 664 S.W.2d at 190.

In the present case, as in *Smith,* a volunteer was appointed to carry out the duties of a paid employee. James Skeen served as a reserve deputy sheriff at the discretion of the Harris County Sheriff's Department. The Department had the right to direct Skeen's duties, had the right to fire or replace him, and accepted the benefit of his services. Skeen was authorized to answer calls involving even serious crimes, and he had often patrolled in his own car. He had on occasion placed himself in the line of duty without being called to active duty by the Sheriff's Department; and he had never been reprimanded or told not to respond to problems or crises when he was off-duty.

Under *Smith,* Skeen would plainly have the same legal status as an employee. During oral argument of this cause, Harris County did not even attempt to reconcile its position with the reasoning of *Smith;* rather, it candidly asserted that the *Smith* court's analysis was "incorrect." The majority, in contrast, attempts to distinguish *Smith* by asserting that liability in that case was not predicated on the actions of volunteers. This argument ignores the *Smith* court's discussion of "the negligence of an agent duly appointed to carry out the duties of the *paid* state employee." 664 S.W.2d at 190 (emphasis in original).[2] The *Smith* court expressly rejected the argument the majority approves today—that since the negligent actor was a volunteer, the governmental unit could not be liable because the actor was not a paid employee within section 101.001(1) of the Tort Claims Act. *Id.*[3]

The majority's discussion of *Smith* implies that liability for a volunteer's actions may be predicated on a claim of negligent supervision of the volunteer. That implication raises the possibility that the Plaintiffs in this case made a tactical error: namely, they should have brought a negligent supervision claim against Skeen's supervisors. Prior case law, however, suggests that training and supervision may be discretionary duties for which the County cannot be held liable. *See County of Brazoria v. Radtke,* 566 S.W.2d 326, 330 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.) (citing the statutory predecessor to TEX.CIV.PRAC. & REM.CODE § 101.056). While *Radtke*'s reasoning may be questiona-

1. The majority appears to dispute that *El Paso Laundry* supports this proposition. *Supra,* n. 1. The employer in *El Paso Laundry* asserted that "under the facts, Pedro, Jr., was only a volunteer and as such could not recover." 36 S.W.2d at 794. The court rejected this argument, holding that the employer, "after having knowledge of the facts and having acquiesced in the presence of Pedro, Jr., and having accepted the benefits of his labor, cannot now be heard to say that he was only a volunteer." 36 S.W.2d at 795.

2. The majority's explanation of *Smith* is also at odds with the deposition testimony of the plaintiff in that case, as presented in the defendant's application for writ of error, still on file with this Court:

Q: And it is your sole contention in this lawsuit that the act of John Drolla [the volunteer] just before this accident occurred is what caused you to be hurt?
A: Yes, sir.
Q: And that is the only reason you were hurt?
A: Yes, sir.

3. The *Smith* court referred to "§ 2(3) of the Act," which was the statutory predecessor of § 101.-001(1). *See* Tort Claims Act, 61st Leg., R.S., ch. 292, § 2(3), 1969 Tex.Gen.Laws 874, 875, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9(1), 1985 Tex.Gen.Laws 3242, 3322 (enacting Texas Civil Practice and Remedies Code).

ble,[4] the Plaintiffs' decision to steer clear of it is understandable. Until today, the case law appeared unfavorable toward a claim for negligent supervision, but favorable toward a claim for the negligent actions of a volunteer.

The Plaintiffs' focus on Skeen, rather than his supervisors, is all the more understandable in light of chapter 102 of the Civil Practices and Remedies Code, which allows a local government to pay damages awarded against an employee. The definition of "employee" in section 102.001(1)—which the trial court submitted as an instruction—expressly includes volunteers.[5]

This Court has previously recognized the difficulty of understanding and applying section 101.021 of the Tort Claims Act, and has urged the legislature to clarify the extent to which this provision waives governmental immunity. *See Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169, 170 (Tex. 1989); *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex.1983); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 301–03 (Tex. 1976) (Greenhill, C.J., concurring). The Tort Claims Act is particularly confusing in its treatment of police-related activities, which are subject to multiple exclusions and exceptions. *See County of Brazoria v. Radtke*, 566 S.W.2d at 330 (Keith, J., concurring).

In view of the confusion surrounding the Tort Claims Act, I believe the Plaintiffs' reliance on existing case law was reasonable— even if that case law is erroneous, as the County contends. Under these circumstances, the Plaintiffs are entitled to a remand in the interest of justice. *See* TEX. R.APP.P. 180; Robert W. Calvert, "*. . . in the interest of justice.*", 4 ST. MARY'S L.J. 291,

297 (1972). Remand is especially appropriate when, as here, this Court has announced a change in prevailing law. *See, e.g., Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex.1990); *L.M.B. Corp. v. Gurecky*, 501 S.W.2d 300, 303 (Tex.1973); *Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966).

Given the opportunity to replead, the Plaintiffs in this case could seek to establish that the death of Lila Jean Dillard, and the injuries to Stephanie Hunold, were caused by Harris County's failure to adequately train and supervise its volunteer deputies. Because the Plaintiffs are entitled to that opportunity, I would reverse and remand this cause in the interest of justice.

---

4. *Compare Radtke*, 566 S.W.2d at 330, *with Huddleston v. Maurry*, 841 S.W.2d 24, 29 (Tex.App.—Dallas 1992, writ dism'd w.o.j.) (officers' actions in pursuit did not involve matters within their discretion); *see also Sem v. State*, 821 S.W.2d 411, 415 (Tex.App.—Fort Worth 1991, no writ) (State may be liable for negligent exercise of control and supervision over contractor's employees).

5. All of the disagreement over the definition of "employee" could have been avoided if the legislature had drafted section 101.001(1) in a manner consistent with section 102.001(1). The latter provision represents an acknowledgement that local governments should in some circum-

stances bear responsibility for the conduct of volunteers; and the assumption of this responsibility would not be an unreasonable burden, since the current definition in section 101.001(1) already excludes "a person who performs tasks the details of which the governmental unit does not have the legal right to control." The inclusion of the word "paid" in section 101.001(1) only leads to arbitrary results, as this case demonstrates: until the word is removed, a governmental unit may escape liability for the conduct of workers within its control simply by assigning volunteers to carry out the duties of paid employees.