**COUNTY OF HIDALGO, Appellant,**

v.

**Adam BROWN and Emma Brown, Appellees.**

**No. 13–99–774–CV.**

Court of Appeals of Texas, Corpus Christi.

June 13, 2002.

Cesar A. Amador, Willette, Guerra & Trevino, Brownsville, Mark Sossi, Roberto D. 'Bobby' Guerra, Willette & Guerra, L.L.P., McAllen, for appellant.

Adolfo 'Al' Alvarez, Jesus Villalobos, Jr., Villalobos & Villalobos, McAllen.

Before Justices DORSEY, CASTILLO, and CANTU [1].

## OPINION

ERRLINDA CASTILLO, Justice.

Appellant, the County of Hidalgo, appeals from a jury verdict in favor of the appellees, Adam and Emma Brown. Adam Brown was injured in an automobile accident while trespassing on private property, when his jeep fell off the side of a drainage ditch created by the county pursuant to an easement. The cause of action was submitted to the jury under the theory of premise defect, under the Tort Claims Act. In five points of error, appellant claims that the evidence was insufficient to support the verdict, and the trial court erred in overruling motions for judgment notwithstanding the verdict and new trial. We reverse.

## Factual Summary

On May 28, 1994, following a morning of hitting golf balls at a driving range, Adam Brown, Antonio James, and Stanley Ramos went to have lunch at a McAllen, Texas pizzeria. The three men were traveling in a convertible jeep driven by James. According to James' trial testimony, he consumed two beers during lunch. After finishing their lunch at approximately 2:00 p.m., the group left the pizzeria to watch a televised sports event at a local sports pub. Since the game was not set to commence until 2:30 p.m., and the group had "30 minutes to kill," James suggested that the group go "four-wheeling" or "off-roading" through an area that he had frequented many times before. Said area was located near a drainage ditch, and according to Ramos, James did not give any indication that the area might have

been a private property area. After traveling up and down ten to fifteen hills, James drove the jeep over a spoil bank that was missing dirt on the opposite side. According to his testimony, James did not know that part of the hill was missing until the jeep was already "going over it off the edge." The jeep took a "nosedive" down the other side of the bank and struck the ground, causing the vehicle to flip over on top of its passengers. Ramos and Brown were transported to the hospital in an ambulance.

Upon arrival at the hospital, Ramos was placed in intensive care and treated for a concussion. He remained there for thirty hours. Brown was in a coma for eight days and underwent approximately three and a half months of treatment for a closed head injury in hospitals in Edinburg, Harlingen, Corpus Christi, and Danville, Illinois before being released and returning to work.

The area in which the accident occurred was a private property area owned by Joseph Thomas, Jr. and his spouse, Sarah Thomas. During his trial testimony, Mr. Thomas identified an easement agreement between Hidalgo County and himself that allowed the county to come onto his property for the purpose of digging ditches. Thomas further testified that his wife and he did not excavate the hill on which the accident occurred, nor did they authorize anyone to do so. Thomas also testified that while his wife and he retained ownership of the property including spoil bank dirt or "berms," according to the easement agreement, the county was responsible for the maintenance of the ditch and berms that it created as well as the service roads next to it.

1. Retired Justice Antonio G. Cantu assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

The deposition testimony introduced at trial of Vona Walker, interim manager of the Hidalgo County Drainage District, also recognized the easement agreement and outlined the terms of the agreement as follows: "[t]he Thomases were granting the Drainage District an easement to construct, operate, and maintain a drainage ditch over and across the property.... As per the easement, the grantors had full use and control of the spoil bank dirt, but that did not include the area where our maintenance road was." Regarding maintenance responsibilities of the county as set out by the easement, Walker offered the following testimony: "... we maintained the area where the road was adjacent to the ditch. We maintained the inside slope of the spoil bank and the top of the spoil bank.... Hidalgo County drainage district received a permit from the [Army] Corps of Engineers, and as part of that permit, we were not able to maintain the outside slope of the spoil banks. We agreed to leave that there so it would provide habitat for the birds and wild animals." Walker also testified that "no trespassing" signs had been posted at all entrances to notify the public that the areas were private ones "not generally for the use of the public."

In response to a direct examination question regarding who cut off the side of the spoil bank in question, Walker stated that the Hidalgo County Drainage District Number 1 did not do that, and explained that the pictures of the area showed "teeth marks" in the dirt. According to Walker, the only equipment that the county had at that time with teeth was a "dragline," which cannot easily be driven from its sitting position to "load a couple of scoops of dirt." Rather, it is used for maintenance of a ditch, such as removing silt from the bottom or to dig new ditches. The trial testimony of Godfrey Garza, Hidalgo County Drainage District Number 1 manager at the time of trial, supported that of Walker regarding the dragline theory. Garza expressed that he was confident that the gouge marks shown in photographs of the berm in question were not done by the county's equipment because the county did not have the type of equipment necessary to perform excavations at the time of the accident. He also stated that the only equipment that the county owned with teeth on it were draglines, which are used to "dig dirt out, not to be pulling it off the banks."

Garza's testimony was in accordance with Walker's regarding the ownership of the property and the stipulations of the easement agreement in effect at the time of the accident, with the exception of the question of whether the drainage district and the County of Hidalgo are one and the same for all practical purposes. While Walker testified in her oral deposition that the drainage district and the county are one and the same, Garza testified that "the drainage district is the responsible entity for the drainage system, not the county."

Appellant moved for an instructed verdict, asserting that the evidence presented by the plaintiffs did not support a violation of any duty that may have been owed to them as trespassers. More specifically, appellant maintained that the appellees did not in any way establish that it was the party that excavated the soil on the other side of the hill. The court overruled the motion, and the jury returned a verdict in favor of the plaintiff. Appellant filed a timely motion for new trial, which was also denied.

### Issues Presented

In his first issue presented, appellant challenges the trial court judge's denial of its motion for judgment notwithstanding the verdict and its motion for new trial, because there was no evidence, or alterna-

tively, insufficient evidence to support the jury's finding that Hidalgo County had acted willfully, wantonly or with gross negligence to injure appellee. In its second issue, appellant claims that there was no evidence, or alternatively, insufficient evidence to support the jury finding that Hidalgo County had acted willfully, wantonly, or through gross negligence to injure the appellee. Appellant complains in its third issue presented that the trial court erred in denying its motion for judgment notwithstanding the verdict and its motion for new trial because the evidence was legally and factually insufficient to support the jury's finding that Hidalgo County owned or operated the premises where the accident occurred. Appellant's fourth issue asserts that the trial court erred by "impliedly finding" that it owned or controlled the premises. Finally, appellant asserts in its fifth issue that the trial court erred in denying its motion for judgment notwithstanding the verdict and its motion for new trial because Hidalgo County was immune from suit under the doctrine of sovereign immunity contained in section 101.021 of the Texas Practice and Remedies Code, and appellee failed to prove facts defeating that immunity.

## Standard of Review

We will address appellant's second issue presented first.

■■ We review a legal sufficiency challenge by considering all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Formosa Plastics v. Presidio Eng'rs*, 960 S.W.2d 41, 48 (Tex.1998); *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 853 (Tex.App.-Corpus Christi 1999, pet. denied). A "no evidence" standard of review is applied when the party not bearing the burden of proof at trial challenges a finding of fact

by arguing that the evidence is legally insufficient to support the finding. *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex. App.-Corpus Christi 1990, writ denied). A legal sufficiency point may only be sustained when the evidence conclusively establishes the absence of a vital fact, the record discloses no more than a mere scintilla of evidence to prove a vital fact, or the court is bound by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact. *Hines v. Commission for Lawyer Discipline*, 28 S.W.3d 697, 701 (Tex.App.-Corpus Christi 2000, no pet.).

■■ In considering a factual sufficiency point of error, we must review all the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). A finding may not be overturned for factual insufficiency unless the evidence is so weak or the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

## Sovereign Immunity and the Tort Claims Act

■ As a general rule, governmental entities are immune from tort liability under the doctrine of sovereign immunity. *Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex.1994). The Texas legislature has created exceptions to the doctrine of sovereign immunity which are applicable under certain conditions. *Id.* Whether a particular claim falls into an exception from the general doctrine of sovereign immunity is entirely dependant on the statutory language. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.1998).

The Texas Tort Claims Act provides that governmental units are liable for "personal injury and death so caused by a condition or use of tangible personal or

real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 1997). It is undisputed that the County of Hidalgo is a "governmental unit" as defined by the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (Vernon Supp.2002).

## Hidalgo County's Liability for Premises Defects

Brown alleged in this case that the spoil bank on which he was injured constituted a dangerous condition of property under Hidalgo County's control, thus creating liability for the county under the Texas Tort Claims Act as a premises defect, for which the county was liable. For the purposes of our review of this question, we will assume that Hidalgo County had control over the property in question and that the Texas Tort Claims Act applies.

 Under the premises defects section of the Tort Claims Act, unless the claimant has paid to use the premises,[2] the State owes to the claimant only the same duty as a private person owes to a licensee on private property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a) (Vernon 1997). Thus where a premise defect exists, the State's only duty is not to injure the licensee willfully, wantonly, or through gross negligence. *State Dep't of Highways and Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992) (op. on reh'g) (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974)). The exception to this rule is that, where a licensor has actual knowledge of a dangerous condition, *and the licensee does not*, the licensor then has the duty either to warn the licensee or to make the condition reasonably safe. *Id.* For there to be liability under such exception, constructive knowledge is insufficient; rather, there must be proof of actual knowledge on the part of the state as to the dangerous condition in question. *Tennison*, 509 S.W.2d at 562.

 The liability question posed to the jury in the instant case did not inquire as to any willful or wanton conduct on the part of Hidalgo County, nor was it submitted under the *Tennison* exception. The question was solely premised on the theory of gross negligence.[3] We consider, there-

---

**2.** There is no claim that appellee paid to use the land in question; rather, it is undisputed that he was trespassing.

**3.** The jury was instructed that Hidalgo County was grossly negligent with respect to the condition of the premises if: (1) the condition posed an unreasonable risk of harm; (2) the County of Hidalgo failed to adequately warn of the danger and failed to make the condition safe; and (3) the county's conduct was more than momentary thoughtlessness, inadvertence or error of judgment. The jury was not specifically asked whether the county or the plaintiff had actual knowledge of the danger. As submitted, the questions of adequately warning and making the condition safe were presented as conditions demonstrating gross negligence, not as the exception and additional duty (and theory of liability) contemplated

by *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974).

We also note that only a broad-form simple negligence question was asked of the jury and the jury was not specifically asked to find that Hidalgo County was grossly negligent. However, the jury was specifically instructed that Hidalgo County would be grossly negligent under certain circumstances and such instruction was part of an accompanying explanation to the simple negligence question. There was no objection to this question as submitted. On appeal, appellant, who was the only party to file a brief, argues the sufficiency of the evidence question under a gross negligence standard. Appellant made no complaint below, and makes none here, to the negligence question submitted to the jury. We find no evidence that the jury was misled as to what the proper standard was for liabili-

fore, only whether the evidence was legally and factually sufficient to support a finding of gross negligence.

 Gross negligence involves proof of two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998) (citing *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994)). In reference to the first requirement, the "extreme risk" means the likelihood of serious injury to the plaintiff. *Id.* In reference to the second requirement, ordinary negligence rises to the level of gross negligence when it can be shown that the defendant was aware of the danger but his acts or omissions demonstrated that he did not care to address it. *Louisiana–Pacific. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex.1999); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). While proof of the second element may be made through either direct or circumstantial evidence, the evidence must demonstrate actual subjective knowledge of an extreme risk of serious harm. *Moriel*, 879 S.W.2d at 22–23.

 Considering the second element first, we find that there was no evidence presented to the jury demonstrating that Hidalgo County was aware of the dangerous condition, namely, the excavation of dirt on one side of the spoil bank, that led to the accident in this case. Even if the county knew that the drainage ditch and its adjacent spoil banks were being used by trespassers, including mountain bikes and four-wheel vehicles, for entertainment, there was no evidence presented that the county knew that the dirt had been removed from one side of the spoil bank, or indeed when the dirt had been removed.

Under the terms of its easement agreement with the owners of the property, the county was responsible for the maintenance of the spoil banks, but the owners possessed the right to remove dirt from the banks if they chose to do so. Thus the spoil berm where the incident took place was not entirely within the county's control and knowledge of the condition of the spoil bank at the time of the accident cannot be imputed to the county. Although appellee presented evidence to the jury demonstrating that a complaint had been filed regarding four-wheeling in the area, in 1992, there was no evidence presented demonstrating that there had been previous accidents on the spoil bank in question. Indeed, James testified that he had personally "gone four-wheeling" over the spoil banks about twenty-five times without inci-

---

ty on the part of Hidalgo County and we review the sufficiency of the evidence under that standard. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000) (where there has been no objection to the charge by the party without the burden of proof, appellate court must review the sufficiency of the evidence by the actual charge given, even if defective); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 266 (Tex.1992) (general negligence question accompanied by appropriate definitions is proper broad form premise liability question); *Harris County v. Smoker*, 934 S.W.2d 714,

720–21 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (liability question which has specific proof requirements may be submitted in a broad form general negligence question if instructions properly set out factors for liability); *Sanchez v. Excelo Bldg. Maint.*, 780 S.W.2d 851, 854 (Tex.App.-San Antonio 1989, no writ) (juries presumed to follow court's instructions and so reviewing court presumed that jury answering broad form liability question would have considered the specific elements required for premise liability that were listed in instructions).

dent. We cannot impute knowledge to Hidalgo County regarding a hazardous condition related to a single spoil bank only partially under its control, located miles away from a public highway, absent evidence of some sort of notification or complaint given to the county regarding the hazard or other evidence of the county's actual knowledge of the hazard's existence.

As there was no evidence presented to demonstrate that Hidalgo County knew of the danger in question and, nevertheless, acted with conscious indifference, Hidalgo County could not have been grossly negligent with respect to the hazard presented by the excavated spoil bank. *See Moriel,* 879 S.W.2d at 22. Therefore, we find that the evidence was legally insufficient to support a finding of gross negligence against Hidalgo County.

### Remaining Issues

Because appellants' second issue presented is dispositive in this case, we do not address appellants' remaining issues. *See* TEX. R. APP. P. 47.1.

### Conclusion

Accordingly, we reverse the judgment of the trial court and render a take-nothing judgment against appellees.