Affirmed and Memorandum Opinion filed August 26, 2004









Affirmed and Memorandum Opinion filed August 26, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00472-CV

____________

 

PAUL SEAN
GAFFNEY, Appellant

 

V.

 

TEXAS
DEPARTMENT OF CRIMINAL JUSTICEBINSTITUTIONAL DIVISION, SHAWN BLAIR, 

AND KENNY JAMES, Appellees

___________________________________________________________________

 

On Appeal from the 278th District Court

Walker County, Texas

Trial Court Cause No. 20,471-C

___________________________________________________________________

 

M E M O R A N D U M   O P I N I O N

Paul Sean Gaffney, an inmate in
the Texas Department of Criminal Justice, Institutional Division (ATDCJ@),
appeals the trial court=s take
nothing judgment in favor of appellees. 
In three issues, Gaffney contends the trial court erred in (1) allowing
TDCJ to present evidence that he was a trespasser, but then failing to submit a
question on that issue; (2) granting a directed verdict for Shawn Blair and
Kenny James; and (3) showing bias by suggesting the theory that Gaffney was a
trespasser when the subject injury occurred. 
We affirm.








I.  Factual Background

Gaffney suffered personal
injuries when he stepped on a grate covering a drainage trench in the Abus barn@ at the
Ellis Unit of TDCJ.  The bus barn is an
area where inmates, under supervision, refurbish school buses.  The barn is divided into several departments,
including welding, auto body, painting, and a sanding department.  The drainage trench surrounds the sanding
department and is approximately ten to eighteen inches wide and eighteen inches
deep. The trench is covered by a metal grate. 


On February 23, 1999, while
working in the sanding department, an inmate named Steven Gilbert stepped on
the grate covering the trench.  The grate
broke and Gilbert=s leg
fell through, causing him to scrape his leg. 
Kenny James, the sanding supervisor, escorted Gilbert to the
infirmary.  Before leaving the sanding
department, James told the inmates to avoid the area of the broken grate.  Also, before taking Gilbert to the infirmary,
James was required to inform Shawn Blair, the bus barn plant manager, that
Gilbert was injured and was being taken to the infirmary.  This was to ensure that when the inmates were
counted, Gilbert would be included in the count.  However, while James was in Blair=s office,
Gaffney walked from the auto body department into the sanding department to ask
for a job.  When Gaffney stepped on the
grate, he also fell through and injured his leg.  James learned of Gaffney=s injury,
escorted him to Blair=s office,
then took Gaffney and Gilbert to the infirmary. 
Gaffney was not authorized to be in the sanding department when he was
injured.  Because Gaffney was not
authorized to be in the sanding department, he received a disciplinary case for
being out of place.  Gaffney subsequently
filed a lawsuit against TDCJ, James, and Blair for his injuries, alleging the
broken grate was a premises defect and that James and Blair were grossly
negligent in their failure to warn him of the danger.








II.  Discussion

A.  Jury Charge 

In his first issue, Gaffney
contends the trial court erred in failing to submit a question on whether he
was a trespasser in the sanding department. 
He argues that TDCJ relied on the ARecreational
Use@ statute[1]
in claiming he was a trespasser, and that the trial court erred because he was
portrayed as an intruder, when he had permission to be in the bus barn.  Gaffney does not argue that the submission of
gross negligence as to TDCJ was error because, as he states, he Astill had
a vehicle for relief if he proved gross negligence on the part of [TDCJ].@  Instead, Gaffney claims the Atrespasser
ruling destroyed the evidence of gross negligence on the parts of [James and
Blair].@   








Gaffney filed his lawsuit
pursuant to sections 101.021(2) and 101.022 of the Texas Tort Claims Act (the AAct@).  See Tex.
Civ. Prac. & Rem. Code Ann. ''
101.021(2), 101.022(a) (Vernon 1997). 
Section 101.021(2) provides that a governmental unit is liable for
personal injury caused by a condition or use of real property if the government
would, were it a private citizen, be liable to the claimant according to Texas
law.  Tex.
Civ. Prac. & Rem. Code Ann. '
101.021(2).  Section 101.022(a) states
that if a claim arises from a premises defect, the governmental unit owes to
the plaintiff only the duty that a private person owes to a licensee on private
property, unless the claimant paid for use of the premises.  Tex.
Civ. Prac. & Rem. Code Ann. '
101.022(a).  The duty that a landowner
owes to a licensee is not to injure the licensee through willful, wanton, or
grossly negligent conduct and, if the landowner has actual knowledge of the
dangerous condition and the licensee does not, the landowner has a duty to
either warn the licensee or make the condition reasonably safe.[2]  State Dept. of Highways & Pub. Transp.
v. Payne, 838 S.W.2d 235, 237 (Tex. 1992);[3]
see also Gaffney v. TDCJ, No. 14-00-00572-CV, 2001 WL 1249756, at
*1 (Tex. App.CHouston [14th Dist.] 2001, no
pet.) (not designated for publication) (hereinafter AGaffney I@).[4]

Here, the liability question
submitted to the jury asked whether TDCJ was grossly negligent with respect to
the condition of the premises.[5]  Specifically, the issue of gross negligence
was submitted as follows:

Was the gross negligence,
if any, of TDCJ a proximate cause of the occurrence in question and was the
negligence, if any, of the plaintiff a proximate cause of the occurrence in
question?

TDCJ was grossly negligent
with respect to the condition of the premises ifC

(a) The condition posed an
unreasonable risk of harm, and

(b) The defendant both
failed to adequately warn the plaintiff of the danger and failed to make that
condition reasonably safe, and

(c) The defendant=s conduct was more than
momentarily thoughtlessness, inadvertence, or error of judgment.  In other words, the defendant must have
either known or been substantially certain that the result or a similar result
would occur, or he must have displayed such an entire want of care as to
establish that the act or omission was the result of conscious indifference or
reckless disregard for the safety of others.

 








In addition, the charge instructed the jury
that Agross
negligence@ was Athe
entire want of care which raises the conclusion that the act or omission was
the result of conscious indifference . . . . Ordinary negligence rises to the
level of gross negligence if the defendant=s act or
omission shows he was aware of the danger and did not care enough to avoid it.@[6]  Thus, Gaffney is incorrect that this charge
applied the law relevant only to intruders or trespassers; the charge applies
to licensees.  See Hidalgo v. Brown,
79 S.W.3d 721, 727 & n.3 (Tex. App.CCorpus
Christi 2002, no pet.); Cobb v. Tex. Dep=t
Criminal Justice, 965 S.W.2d 59, 63 (Tex. App.CHouston
[1st Dist.] 1998, no pet.).  Hence, the
trial court did not submit an incorrect charge. 


Moreover, Gaffney does not
complain about the submission of Agross
negligence@ as it pertains to TDCJ.  Instead, he argues that the charge was
incorrect regarding the individual defendants. 
However, no question was submitted to the jury regarding the liability
of James and Blair because the trial court granted a directed verdict in favor
of those defendants, an issue we address subsequently.  

Finally, even assuming for the
sake of argument that the charge was incorrect, because Gaffney did not object
or submit an instruction or question, he failed to preserve error on this
issue.[7]  See Tex.
R. App. P. 33.1(a); Tex. R. Civ.
P. 278; Lopez v. S. Pac. Transp. Co., 847 S.W.2d 330, 333 (Tex.
App.CEl Paso
1993, no writ) (stating under Rule 278 Apurported
error regarding an omitted jury instruction is deemed waived absent the request
and tender, in writing, of an instruction in substantially correct form@).  Any complaint to a jury charge is waived
unless specifically included in an objection.  Tex. R. Civ. P. 274; Tex. R. App. P. 33.1(a)(1).  A party must timely make the trial court
aware of the complaint and obtain a ruling. 
In re B.L.D., 113 S.W.3d 340, 349 (Tex. 2003).

Based upon the foregoing, we overrule Gaffney=s first issue.  








B.  The Directed Verdict

In his second issue, Gaffney contends the trial court erred
in granting a directed verdict in favor of James and Blair.  Gaffney alleged that James and
Blair were grossly negligent in failing to warn him of the grate=s
condition.  At the close of evidence, the
appellees moved for a directed verdict, contending Gaffney presented no evidence
of gross negligence.[8]  The trial court granted the motion on behalf
of James and Blair, but denied the motion on behalf of TDCJ. 

In reviewing a directed verdict,
we must determine whether any evidence of probative force raises a fact issue
on the material questions presented.  Deutsch
v. Hoover, Bax & Slovacek, L.L.P., 97 S.W.3d 179, 187 (Tex. App.CHouston
[14th Dist.] 2002, no pet.).  We consider
all of the evidence in a light most favorable to the party against whom the
verdict was directed and disregard all contrary evidence and inferences.  Id. 
If any evidence of probative value supports any theory of recovery, a
directed verdict is improper and the case must be reversed and remanded for
jury determination of that issue.  Szczepanik
v. First Southern Trust Co., 883 S.W.2d 648, 649 (Tex. 1994); Deutsch,
97 S.W.3d at 187.








Gross negligence involves proof
of the following two elements:  (1)
viewed objectively from the actor=s
standpoint, the act or omission must involve an extreme degree of risk,
considering the probability and magnitude of the potential harm to others; and
(2) the actor must have actual, subjective awareness of the risk involved, but
nevertheless proceed in conscious indifference to the rights, safety, or
welfare of others.  Mobil Oil Corp. v.
Ellender, 968 S.W.2d 917, 921 (Tex. 1998); R&R Contractors v. Torres,
88 S.W.3d 685, 707B08 (Tex.
App.CCorpus
Christi 2002, no pet.); see generally Tex. Dept. of Parks & Wildlife v. Miranda, No. 01‑0619, 47 Tex. Sup. Ct. J. 386, 2004 WL 726901,
*5 (Tex. 2004) (examining evidence of gross negligence under Tort Claims Act in
relation to these elements of gross negligence).  Under the Aobjective@ element
of gross negligence, extreme risk is Anot a
remote possibility of injury or even a high probability of minor harm, but
rather the likelihood of serious injury to the plaintiff.@  Mobil Oil Co., 968 S.W.2d at 921; R&R
Contractors, 88 S.W.3d at 708B09.  Regarding the second element, ordinary
negligence rises to the level of gross negligence when it is shown that the
defendant was aware of the danger, but his acts or omissions reflect that he
did not care to address it.  R&R
Contractors, 88
S.W.3d at 708.  Direct or circumstantial
evidence may serve to prove the second element. 
Mobil Oil, 968 S.W.2d at 921. 
Evidence of simple negligence, however, is insufficient to prove either
of the elements of gross negligence.  Id.

Here, from the viewpoint of the
actor, James, the evidence reflected that he had actual knowledge of the
condition of the grate.  However, he
testified that at the time Gaffney fell through the grate, he was taking
Gilbert, the first inmate injured, to the infirmary as he was required to do
under TDCJ policy.  James testified that
he asked an inmate welder to come fix the grate after Gilbert was injured.  Although another inmate, Malcolm Williams,
testified that James told him to put the grate back into place prior to the
welder arriving, this does not rise to the level of Aextreme
risk.@  See, e.g., Universal Servs. Co.,
Inc. v. Ung, 904 S.W.2d 638, 641B42 (Tex.
1995). 








Further, James stated that he
warned all the inmates working in the sanding area to avoid the grate and that
inmates working in the taping area were also aware of the problem because they
were there when Gilbert fell through the grate. 
He stated he did not think there was a substantial risk of someone from
outside the sanding department coming through the area.  Importantly, evidence showed that Gaffney
should not have been in the sanding area and James testified that had he known
other inmates would come into the area, he would have instructed another
supervisor to attend to the grate while he escorted Gilbert to the infirmary. 

Blair=s
knowledge of the broken grate at the time of Gaffney=s
accident is less certain. Inmate Leonard Ray Croom testified that whenever
there is a problem in the facility, inmates report the problem directly to an
officer.  The officer prepares daily
reports and writes a weekly facility report that is given to the head
supervisor.  Although the inmates and
James testified that forklifts had broken the grates and fallen into the ditch
prior to Gaffney=s injury,
Blair testified that he could not recall any incidents in which the grate or
the underlying drains had been broken. 
Moreover, there was no evidence that an individual, weighing much less
than a forklift, had ever broken the grate or been injured prior to Gilbert=s and
Gaffney=s
injuries.  

James testified that he informed
Blair of the broken grate on the day of the inmates=
injuries.  Blair testified that James
brought Gilbert to the office where he was working, as he was required to do,
and then immediately left to get the welder. 
After Gaffney fell, James returned to inform Blair that another inmate
had been injured and then James brought both inmates to the infirmary.  Further, no one disputes that James was
responsible for the repair of the broken grate. 
Blair also stated that he was confident that James would have the grate
fixed and he felt James acted reasonably. 

Given this evidence, we do not
find that the risk of James=s or
Blair=s conduct
was so extreme as to create a likelihood of serious injury and the trial court
did not err in directing a verdict in their favor.  See, e.g., Ung, 904 S.W.2d at
641B42.  Accordingly, Gaffney=s second
issue is overruled. 

C.  Bias   

In his third issue, Gaffney
contends the trial court was biased because the court first presented the Aintruder
theory.@  The record clearly reflects; however, that
the issue was raised by appellees and not by the trial court.  Gaffney=s third
issue is overruled.








The judgment of the trial court is affirmed.

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Memorandum Opinion filed August 26, 2004.

Panel
consists of Chief Justice Hedges and Justices Fowler and Guzman.

 

 











[1]  See Tex. Civ. Prac. & Rem. Code ' 75.002(a).  





[2]  The duty owed
a trespasser is not to injure that person willfully, wantonly, or through gross
negligence.  Tex. Dept. of Parks &
Wildlife v. Miranda, No. 01‑0619, 47 Tex. Sup. Ct. J. 386, 2004 WL 726901, *5 (Tex. 2004) (citing Tex.
Utils.  Elec. Co. v. Timmons, 947
S.W.2d 191, 193 (Tex. 1997)).





[3]  See also Tex. Gov=t Code ' 497.096 (stating that TDCJ employees are not liable
for damages arising from acts or failures to act regarding inmates involved in
educational and other activities, if the act or failure to act was not Aintentional, wilfully or wantonly negligent, or
performed with conscious indifference or reckless disregard for the safety of
others.@).  





[4]  In Gaffney I, this Court
reversed a summary judgment granted against Gaffney, holding that he was not
required to prove willful, wanton, or grossly negligent conduct by the TDCJ if
he proved (1) a condition of the premises created an unreasonable risk of harm;
(2) the TDCJ actually knew of the condition; (3) Gaffney did not actually know
of the condition; (4) TDCJ failed to exercise ordinary care to protect Gaffney
from danger; and (5) TDCJ=s failure was a proximate cause of
injury to Gaffney.  See Gaffney,
2001 WL 1249756, at *1.  





[5]  A premises
defect claim under the Act cannot be recast as a general negligence claim under
section 101.021(2).  See Miranda,
2004 WL 726901, *12.   





[6]  The evidence at
trial showed that TDCJ knew of the broken grate; however, there was no evidence
establishing that Gaffney did not know of its dangerous condition.   





[7]  Gaffney argues that because he is
representing himself, we should not hold him to the same procedural standards
as a party who is represented by counsel. 
Pro se litigants, however, are held to the same standards as
licensed attorneys, and they must therefore comply with all applicable rules of
procedure.  Clemens v. Allen, 47
S.W.3d 26, 28 (Tex. App.CAmarillo 2000, no pet.). 





[8]  Gaffney
contends that by directing a verdict in their favor, the trial court granted
James and Blair immunity.  To the
contrary, the trial court found no evidence of gross negligence, but did not
rule on the issue of immunity.  Both
Gaffney and TDCJ argue in their respective briefs the merits of James=s and Blair=s
official immunity.  However, because the
trial court did not consider immunity in granting the motion for directed
verdict, we focus on the question of gross negligence.  See generally Bradshaw v. Universal DTEC
Corp., No 01-96-01555-CV, 1998 WL 230419, at *3 (Tex. App.CHouston [1st Dist.] 1998, no pet.) (not designated for
publication) (overruling appellant=s issue
that claimed trial court erred in granting the directed verdict because the
reason appellant cited was not considered by the trial court and therefore
irrelevant).