**James P. SMITH, Appellant,**

v.

**The UNIVERSITY OF TEXAS, Appellee.**

**No. 13829.**

Court of Appeals of Texas, Austin.

Jan. 4, 1984.

Rehearing Denied Jan. 25, 1984.

Claude E. DuCloux, Robinson, Felts, Starnes & Latting, Austin, for appellant.

Mark White, Atty. Gen., Jack Sparks, Asst. Atty. Gen., Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

EARL W. SMITH, Justice.

Under the Texas Tort Claims Act[1] (hereafter, the Act), appellant, James P. Smith, sued The University of Texas (hereafter the University) and the National Collegiate Athletic Association (hereafter NCAA) for personal injuries received by Smith while serving as an appointed, unpaid and volunteer official at the NCAA National Track and Field Meet conducted under the auspices of NCAA by the University at Memorial Stadium in Austin. Smith took a nonsuit as to NCAA. The University's motion for summary judgment was sustained by the trial court and judgment was entered dismissing Smith's suit against the University.

In this appeal, Smith contends that the trial court erred in granting the University's motion for summary judgment dismissing his petition for the reasons that: (1) there is no requirement under the Act that the tangible real or personal property involved in the tort be defective and (2) a claim under the Act can arise through the negligence of an unpaid agent duly appointed by, and carrying out the duties of, a paid State employee. We agree. The judgment of the trial court is reversed and this cause is remanded for trial.

## THE ACT

Section 3 of the Act provides in part:

1. Tex.Rev.Civ.Stat.Ann. art. 6252–19 (1970 & Supp.1982).

Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, *or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this State.* . . . (emphasis added)

Section 2(3) defines "officer, agent, or employee" as follows:

"Officer, agent, or employee" shall mean every person who is in the paid service of any unit of government, by competent authority, whether full or part-time, whether elective or appointive, and whether supervisory or nonsupervisory, it being the intent of the Legislature that this Act should apply to every person in such service of a unit of government, save and except as herein provided. . . .

### THE UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT

Tex.R.Civ.P.Ann. 166–A (1976 & Supp. 1983) provides:

\* \* \* \* \* \*

(b) . . . A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) Motion and Proceedings Thereon. The motion for summary judgment shall state the specific grounds therefor. . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of the damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response. . . .

█ The burden of demonstrating the lack of a genuine issue of material fact is upon the movant, and all doubts are resolved against movant. 4 McDonald, Texas Civil Practice, § 17.26.12(IV), at 174 (Rev. Ed.1971); *Town North National Bank v. Broaddus,* 569 S.W.2d 489, 494 (Tex.1978); *Mays v. Foremost Insurance Company,* 627 S.W.2d 230, 233 (Tex.App.1981, no writ).

In its motion for summary judgment the University contends that summary judgment should be granted on these grounds:

1. The sole allegations of negligence in plaintiff's original petition concern the alleged negligence of certain officials in the discharge of their duties in failing to properly supervise and in failing to promulgate rules and regulations. The allegations contained in the petition fail to allege a valid cause of action against the University under the laws of Texas.

2. All pleadings in the case and the deposition of plaintiff, Smith, are incorporated by reference in the motion for summary judgment for all purposes. The pleadings and the testimony of the plaintiff show that plaintiff has failed to allege a cause of action under the laws of the State of Texas.

3. That both Smith and Drolla (the head supervisor of the shot-put event) were "volunteer officials" and were not officers, agents or employees of the University within the meaning of the Act. Neither Smith nor Drolla received any pay or compensation for

their voluntary services. Smith's sole contention, as shown by exhibit "A" (an excerpt from his deposition) was that he was injured because of the negligence of volunteer official John Drolla; Smith was not alleging or contending that any other act or omission on the part of the University caused his injuries. Thus, the alleged negligent acts and omissions of Drolla do not state a cause of action under the Act.

4. There is no allegation by Smith that he was injured because of any defective or deficient property or from the use of any property which was inappropriate for the purposes for which it was being used.

As noted, the University's motion for summary judgment incorporates by reference all pleadings in the case and the deposition of Smith as a part of the motion. In addition, attached to the motion were two exhibits. Exhibit "A" contains an excerpt from the deposition of Smith. The excerpt thereof relied upon by the University in its brief reads:

Q. And it is your sole contention in this lawsuit that the act of John Drolla just before this accident occurred is what caused you to be hurt?

A. Yes, sir.

Q. And that is the only reason you were hurt?

A. Yes, sir.

Exhibit "B" is an affidavit by Cleburne Price, Jr., reciting that he is, and was at all times pertinent to the lawsuit, head track coach at the University; that he was "in charge of the NCAA National Track and Field Championships held at The University of Texas at Austin in June, 1980;" that Smith and Drolla "were among many volunteer officials who participated in the meet"; that "[n]either Smith nor Drolla was paid or in any way compensated for their participation as field event officials"; and that injuries to Smith were caused by a shot thrown by a Texas A & M University student who was not employed by or in any way compensated by the University.

## SMITH'S REPLY TO UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT

In Smith's reply to the University's motion for summary judgment, he asserts that his petition encompasses more than the negligence of John Drolla because the petition alleges the failure of the University to properly supervise the shot-put events and the failure to promulgate or require rules and regulations of conduct reasonably calculated to protect the participants, officials, and others from harm.

Smith, in his reply, enumerates facts developed in discovery (Smith's request for admissions and interrogatories propounded to the University, and the University's answers to such, which are found in the transcript) as follows:

1. Price was the meet director of the NCAA track and field championships held at the University June 3–7, 1980.

2. Price was an agent or employee of the University at all times during the track meet.

3. Price was responsible for the overall organization and conduct of the track meet.

4. Price appointed John Drolla to act as head official of the shot-put event and determined his qualifications to so act.

5. The facilities of Memorial Stadium are governed generally by state law and rules and regulations of the University System Board of Regents.

6. The conduction of the shot-put event involved the *direction of the use of state property and facilities.* (emphasis added)

Smith's reply further alleges that Price was acting within the scope of his employment while performing all duties incident to running the track meet, and that he was a competent authority who could assign duties to others, such as John Drolla.

Smith further asserts that in § 13 of the Act, the Legislature has required that the Act be construed liberally to achieve the

intention of the Act, and that to allow a State employee, with authority, duty and ability to perform a function, to delegate that duty to an unpaid volunteer and thereby avoid liability for injuries resulting from the negligent performance of the duty, contradicts the purposes of the Act.

Smith further contends, in his reply, that § 3 of the Act affords a cause of action for "[p]ersonal injuries proximately caused by ... *some use of tangible property, real or personal,* under circumstances where such unit of government would be liable to the claimant if [the unit of government were] a private person." (emphasis added).

More specifically, Smith's reply to the motion for summary judgment alleges that "[t]he injuries sustained by James P. Smith arose from the improper direction of the use of state property, namely the shot put sector," and that it was the intent of the Legislature "to make units of government liable for the injuries proximately caused by the negligence in the use of property where liability would result in the private sector." The University of Texas would be liable to James Smith, if it were a private corporation, for misdirecting the use of the shot-put sector. The shot-put event is an extremely dangerous use of real property.

It is further contended by Smith that John Drolla's acts in negligently conducting the shot-put event were, in effect, the acts of Price, since Price had the power, duty and responsibility to choose officials. He further asserts that the University, if a private corporation, would be liable for its actions which led to the negligent use of its real and personal property, proximately causing personal injuries to plaintiff.

## SMITH'S PETITION

In paragraph three of his petition, Smith alleges:

3. About June 6, 1980, The University of Texas, under the auspices of the NCAA, conducted a track and field event on the premises of The University of Texas in Austin, Texas, which event included, among others, a shot put competition. Plaintiff was a volunteer official at said shot put competition and was acting under the direction and control of defendants at all times pertinent. While carrying out his duties as a volunteer official at such competition, plaintiff received severe, painful, and permanent personal injuries because of the negligent acts of defendants and their agents when he was struck in the head by a shot during the track and field competition. The injuries susained [sic] by plaintiff were a direct and proximate result of the negligent acts of the defendants. The negligent acts of The University of Texas included, among others, the failure of the agent or agents of The University of Texas in charge of such event to supervise such event properly, the failure of The University of Texas *to supervise the use of real and personal property* (the shot put area and the use by athletes of the shots themselves) in a reasonably prudent manner, the failure to promulgate or require rules and regulations of conduct reasonably calculated to protect participants, officials, and others from harm. . . . (emphasis added)

## SMITH'S DEPOSITION

Relevant facts developed in Smith's deposition were as follows: The incident in question occurred at the NCAA National Track and Field Event held at the University Track and Field Event facilities at the University's Memorial Stadium in June, 1980. Smith was a volunteer official of the shot-put event at such meet, appointed as such official by Price, the University head track coach, and director of the track meet. Smith had served as an official at almost every University track event since 1974. Price was in charge of all University track meets. Officials were notified by Price when to report to the meet. Drolla was appointed by Price to serve as head official of the shot-put competition. A meeting of the head officials was held before the NCAA meet in question started.

Pictures of the shot-put event area in Memorial Stadium were identified, as was a drawing prepared by the University's attorney. Smith worked as a "spotter" in the landing area of the shot-put event—his duties were to mark the place where the shot-put landed, assist in measuring the distance that the shot was thrown, and to repair or smooth out the "spots" made by the shot. He worked during the "warm-up" period for some twenty to thirty minutes, smoothing out the "spots" and returning the shot to the participants.

At all times during the "warm-up" period, Drolla was at the throwing circle—the place from which participants threw shots into the landing sector. The competition in the shot-put event was scheduled to start at 8:30 p.m.; warm-ups by the participants had to end before that time. After warm-ups were conducted Drolla called the participants together for final instructions before the competition began, in accordance with usual procedure.

The meeting between Drolla and the participants was held between the shot-put circle and the landing sector, at a place blocking Smith's view of the shot-put circle.

Smith did not anticipate any more warm-up shots, nor did two other officials who were working with Smith in the landing sector, since Drolla had called the participants together for final instructions before competition began. Smith therefore assumed that the warm-ups were over. At that time, he was standing in the landing sector some sixty feet from the front of the shot-put circle. It was customary that an official yell "last throw" after the warm-ups were completed. Though Smith did not hear any such statement, as stated above, he assumed the warm-ups were over. While Drolla was holding his meeting, Smith was smoothing out a spot, when he heard a shout, looked up, and was struck in the head by a shot thrown by a Texas A & M participant, as a result of which he received serious injuries.

Participants and spectators were not allowed in the landing sector during warm-ups. At the time Smith was struck by the shot there were some participants in the area where plaintiff was injured.

Smith was "responsible" to Price, the meet director. His reply states that when in his petition, he alleged "agents," he was referring to both Drolla and Price.

In any meetings that Smith ever attended, no safety rules and regulations were discussed. He received no pay, nor did Drolla.

Smith stated that he alleged that the University was negligent in failing to properly supervise the area. He said that Drolla, an agent of the University, who was in charge of the shot-put area, did not supervise the area—did not make sure it was safe. He said that the University failed to promulgate rules and procedures as to when the warm-ups would end and competition would begin. He stated that he was injured because Drolla called the athletes together so that his vision of the shot-put circle was obstructed and because of the fact that Drolla did not inform "us" that there was going to be another throw.

Smith further testified that "a contributing factor" was that as long as he had been officiating, there had never been any discussion of safety on the part of coaches or anyone connected with the University and that there was no such discussion for the NCAA national event in question.

## THE TRIAL COURT ERRED IN GRANTING UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING SMITH'S CAUSE OF ACTION

In support of its argument that the trial court properly granted this motion for summary judgment, the University argues, first, that it is not liable in tort for negligence in appointing incompetent employees. We do not necessarily quarrel with this principle; however, it is noted that Smith's cause of action is not based on such theory. There is no allegation that either Price or Drolla was incompetent. Rather, the allegations are that the University's agents in charge of the shot-put event were negligent

in the particulars set out in Smith's petition.

Next, the University argues that no suit may be maintained against the University for torts of its officers or agents in the absence of constitutional or statutory authority therefor. The University relies heavily on the Supreme Court case of *Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976). Again, with the above stated principle of the law pronounced by both *Lowe* and *City of Austin,* we cannot disagree.

In *Lowe,* plaintiff alleged that he injured his knee while playing football for Texas Tech, that on a later date the knee was re-injured and that the coaching staff, management, and trainers of Texas Tech were negligent: in failing to furnish proper equipment, braces, and/or supporting equipment devices to plaintiff; in failing to permit plaintiff to wear proper equipment, braces, and supporting devices available; in furnishing equipment, uniforms, and pads which were defective; and in refusing to permit plaintiff to wear proper and prescribed equipment, braces, and supporting devices. The trial court held that the allegations of plaintiff did not invoke the waiver of governmental immunity provisions of the Tort Claims Act and sustained defendant's plea to the jurisdiction and plea in abatement. The Court of Civil Appeals affirmed. The Supreme Court reversed the judgments of the trial court and the Court of Civil Appeals and remanded the cause to the trial court. The Supreme Court held that plaintiff's allegations that Texas Tech, through its authorized personnel, was negligent in affirmatively furnishing "equipment, uniforms and pads which were defective" stated a case within the waiver of statutory immunity arising from "some condition" or "some use" of tangible property. The court also held that plaintiff's allegations of a negligent failure to furnish him proper protective items of personal property, to be used as a part of the uniform furnished him, brought plaintiff's case within the statutory waiver of immunity arising "from some condition or some use" of personal property. The Supreme Court

reviewed previously decided cases construing § 3 of the Act.

Noting *McGuire v. Overton Memorial Hospital,* 514 S.W.2d 79 (Tex.Civ.App.1974) writ ref'd n.r.e., per curiam, 518 S.W.2d 528 (Tex.1975), the Supreme Court in *Lowe, supra* at 299 said:

> In *McGuire,* we let stand the judgment of reversal of a summary judgment in favor of a municipally operated hospital, and a remand for trial, of a suit for personal injuries caused when a patient fell while attempting to get out of bed.... We said:
>
>> "... [w]e believe that injuries proximately caused by negligently providing a bed without bed rails are proximately caused from some condition or some use of tangible property under circumstances where a private person would be liable. Therefore, if the Hospital is found negligent in providing a bed without guardrails, it may not assert governmental immunity...." (citation omitted)

The Supreme Court also noted its approval of *Mokry v. University of Texas Health Science Center at Dallas,* 529 S.W.2d 802 (Tex.Civ.App.1975, writ ref'd n.r.e.). *Id.* In that case, Mokry brought suit under the Act for personal injuries resulting from the negligent loss of his left eyeball after it had been surgically removed and while it was being prepared for laboratory examination at The University of Texas Health Science Center. The negligence alleged against the state agency was a failure to provide, *for use,* certain items of laboratory equipment, together with the failure to properly use the facilities that were employed. The Court of Civil Appeals held that the allegations to such effect stated a cause of action arising from some condition or use of tangible personal property within the purview of the Act.

The questions raised by Chief Justice Greenhill in his concurring opinion in *Lowe, supra* have created much interest and discussion. Judge Greenhill emphasized that "[t]he language of § 3 is particularly diffi-

cult to apply" and he encouraged the Legislature to "express more clearly its intent as to when it directs that government immunity is waived." See *Lowe, supra* at 301, for a full discussion of Judge Greenhill's position.

■ The University construes *Lowe* to mean that unless there are allegations in plaintiff's petition that tangible property was defective or was improperly used, there is a failure by plaintiff to state a cause of action under the Act. This is one of the grounds urged by the University in its motion for summary judgment.

The Supreme Court in *Salcedo, et al. v. El Paso Hospital District,* 659 S.W.2d 30 (1983), has now given clarity to *Lowe* and the meaning of § 3 of the Act. In doing so, it disposes of the University's contention in its motion for summary judgment that there was no allegation by Smith "that he was injured because of any defective or deficient property or from the use of any property which was inappropriate for the purposes for which it was being used." In *Salcedo, supra,* Alicia Salcedo sued Dr. Diaz and the El Paso Hospital District for the death of her husband. He was examined in the emergency room of R.E. Thompson General Hospital, a unit within the El Paso Hospital District, by Dr. Diaz, an employee of the District. Dr. Diaz ordered an electrocardiogram test. The results of the test allegedly showed a classic pattern of myocardial infarction (heart attack). Released by Dr. Diaz after the examination, Salcedo collapsed shortly after returning home. He was pronounced dead on return to the emergency room. Autopsy revealed that Salcedo died as a result of myocardial infarction.

Mrs. Salcedo's petition alleged that the employees or servants of the hospital district *misused, by failing to use,* intravenous, oxygen, or cardiac monitory equipment. She further alleged that the hospital district's employees and agents misused the electrocardiographic equipment by improperly reading and interpreting the graphs and charts produced by the equipment. The hospital district filed special exceptions contending that Mrs. Salcedo failed to state a cause of action within the waiver of governmental immunity under the Act. The exceptions were sustained and the petition was dismissed. The Supreme Court, in reversing the judgments of the trial court and the Court of Appeals and remanding the cause to the trial court, held:

> The words "some condition" require an allegation of defective or inadequate property when "some condition" of property is a contributing factor to the injury. However, liability can also attach for "personal injuries or death when proximately caused ... from ... *some use* of tangible property, real or personal, under circumstances where such unit of government, if a private person would be liable...." (citation omitted) (emphasis in original)

The Court then proceeded to discuss the problems raised by Judge Greenhill in his concurring opinion in *Lowe, supra* and stated:

> Seven years have passed since our opinion in *Lowe,* yet the legislature has not changed the troublesome waiver provision. Thus, the statute has remained susceptible to broad or narrow interpretations. However, section 13 of the Act provides, "The provisions of this Act shall be liberally construed to achieve the purposes hereof." (citation omitted)

> \*     \*     \*     \*     \*     \*

> To hold that the Act requires an allegation of defective or inadequate property when such an allegation is neither expressly nor impliedly required by section 3 would place a restrictive interpretation on the "condition or use" language. Because of the mandate from the legislature that the Act be liberally construed we cannot give the language such a restrictive interpretation. We hold, therefore, an allegation of defective or inadequate tangible property is not necessary to state a cause of action under the Act if "some use" of the property, rather than "some condition" of the property is alleged to be a contributing factor to the injury.

> \*     \*     \*     \*     \*     \*

Mrs. Salcedo alleged her husband's death was proximately caused by the negligence of the defendants in the use (misuse) of tangible property belonging to the defendant. She alleged the negligent use was the improper "reading and interpreting" of the electrocardiogram graphs. "Use" has been defined in the context of this statute as "to put or bring into action or service; to employ for or apply to a given purpose." (citation omitted) ... We hold, therefore, that Mrs. Salcedo has alleged her loss was proximately caused by the negligence of the hospital district's employees in the use of tangible property. Her allegations state a cause of action within section 3 of the Texas Tort Claims Act.

We note that there was no allegation of defective equipment in *Salcedo.*

The University's contention that Smith's petition failed to state a cause of action because there were no allegations of any defective or deficient property is overruled. It was not entitled to motion for summary judgment on such grounds.

■ We turn now to the University's contention that it was entitled to a summary judgment because the sole allegations of negligence in plaintiff's original petition concern the alleged negligence of certain officials in the discharge of their duties in failing to properly supervise and in failing to properly promulgate rules and regulations. We emphasize that though special exceptions to Smith's petition were filed, no ruling thereon was ever obtained by the University from the court. The University fails to recognize that Smith alleged:

1. [That] The University of Texas ... conducted a track and field event on the premises of The University of Texas in Austin, Texas, which event included ... a shot put competition.

2. [Smith] was a volunteer official at the said shot put competition and was acting under the direction and control of [the University] at all times pertinent.

3. While carrying out his duties ..., [Smith] received severe, painful, and personal injuries because of the negligent acts of defendants and their agents ... [which injuries were a direct and proximate result of the negligent acts of defendant].

4. The negligent acts ... included among others ... the failure of ... The University of Texas to supervise *the use of real and personal property (the shot put area and use by athletes of the shots themselves)* in a reasonably prudent manner, the failure to promulgate or require rules and regulations of conduct reasonably calculated to protect participants, officers and others from harm .... (emphasis added)

Thus there is a clear allegation by Smith that the University was negligent in the use of tangible real and personal property in that they failed to supervise use of same. In Smith's reply to the University's motion for summary judgment, he correctly stated that pursuant to discovery, the following admission was made by the University: that the conduction of the shot-put event involved the direction *of the use* of state property and facilities.

■ Moreover, the deposition of Smith, taken by the University, and made a part of its motion for summary judgment proof, shows that the shot-put event was conducted at the University's Memorial Stadium and that use of tangible real property was had to conduct the shot-put event in which Smith was injured. Without repeating all the proof listed in Smith's deposition, we hold that a fact issue exists as to whether the University's employee, Price, and the official, Drolla, appointed by Price, were negligent in the use of such tangible property by failing to properly supervise the same in the conduct of the shot-put event.

We hold further, that the affidavits attached to the University's motion for summary judgment do not address themselves to whether the use of the University's real or tangible personal property was involved in the injuries received by Smith. Under

*Salcedo, supra,* we hold that plaintiff's petition stated a cause of action under the Act.

■ In addition, as shown above, the University's special exceptions are not shown by the record to have been presented to or ruled upon by the court. The judgment of the court does not purport to rule thereon. It only recites that the court considered the pleadings, evidence and argument of counsel, "including the statement of Plaintiff's attorney that he did not need to amend Plaintiff's petition in this cause," and then proceeds to enter summary judgment that Smith's suit be dismissed. Whether the pleadings fail to state a cause of action may not be resolved by summary judgment. *See Massey v. Armco Steel Company,* 652 S.W.2d 932, 934 (Tex.1983), in which the Supreme Court quoted from its opinion in *Texas Department of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex.1974) as follows:

> Only after a party has been given an opportunity to amend after special exceptions have been sustained may the petition be dismissed for State's failure to state a cause of action .... This Court believes that the protective features of special exception procedure should not be circumvented by a motion for summary judgment on the pleadings where plaintiff's pleadings ... fail to state a cause of action.

■ Finally, the University contends that its motion for summary judgment was proper in that Drolla and Smith were both voluntary track officials, and were not officers, agents or employees of the University within the meaning of the Act. The undisputed facts are that both were voluntary and unpaid track officials. However, it is also admitted by the University in answer to Smith's request for admissions: that Price was the meet director, and an agent or employee of the University; that he appointed John Drolla as the head official of the shot-put event; that Price was responsible for the overall organization and conduct of the meet; and that John Drolla as head official of the shot-put event, had authority to direct the contestants as well as the use and operation of the shot-put sector of Memorial Stadium. In addition, in an answer to Smith's interrogatories, the University stated: that Price and John Drolla, on behalf of the University, were charged with seeing that safety guidelines concerning the shot-put event were followed at the time of the incident; and that Price, on behalf of the University, was charged with appointing the head officials and other officials for the shot-put event.

The University argues that Smith testified that the sole cause of his injury resulted from the negligent acts of Drolla and that Smith is bound by his admissions. The University has selected, out of context, a statement by Smith as to the *immediate* cause of his injuries. However, when Smith's deposition testimony is read in its entirety, we conclude that Smith claims that the University, and Price, its employee, were negligent in failing to supervise the shot-put event and in failing to adopt rules and regulations for the safe conduct of the shot-put event, which he classified as "dangerous." It is clear, also, both in his reply to the University's motion and in his deposition read in its entirety, that Smith contends that the University was negligent in the use of tangible real property in the manner in which the shot-put event was conducted.

In support of the order granting its motion for summary judgment the University also contends that the allegation of negligence of an alleged employee does not state a cause of action under the Act. Here, the University relies on *Texas Department of Corrections v. Herring, supra.* We do not construe *Herring* to be in point, since the basis of the holding in Herring was the pre-*Salcedo* rule that "no use of tangible property was alleged as required by the Texas Tort Claims Act."

In a post-submission letter supplementing its brief, the University states:

> It is the position of The University of Texas in connection with this appeal that at the summary judgment hearing the sole proof presented was that the plaintiff has testified and admitted that the

alleged negligent conduct of the voluntary official, John Drolla, was a proximate cause of his injury. The only summary judgment proof is that John Drolla was not a paid employee of The University of Texas as required by § 2(3) of the Act and under the expressed requirements of the Texas Tort Claims Act the alleged negligence of John Drolla does not create any liability on the part of The University of Texas for the plaintiff's injuries. Pleadings do not constitute proof in a summary judgment hearing. The University continues to ignore Smith's reply to its motion for summary judgment to the effect that the University was negligent in its failure to supervise the use of real and personal property (the shot-put area and the shots themselves in a reasonably prudent manner). It also does not take into account admissions by the University that Price was an employee of the University as head track coach; that he was responsible for the conduct of the entire meet as meet director; that he appointed Drolla as the head official of the shot-put event; and that Price and Drolla were charged with seeing that safety guidelines concerning the shot-put event were followed; that on behalf of the University, Price was charged with appointing the head official (Drolla) for the shot-put event; and that Drolla (as head official) had authority to direct the contestants as well as the use and operation of the shot-put sector of Memorial Stadium. In short, the admissions and the deposition of evidence show that Smith was complaining of the negligence of the University, Price, and Drolla—not just Drolla alone.

■ The real thrust of the University's argument is that since Drolla was a volunteer, the University could not be liable as a matter of law because he was not a paid employee or agent within the meaning of § 2(3) of the Act. The University does not question the paid status of Price. Smith, in reply, argues that a claim under the Act can arise through the negligence of an agent duly appointed to carry out the duties of the *paid* state employee. We agree. The real question, as stated in *Salcedo, su-*

*pra,* is whether there was "some use" of tangible property under circumstances where there would be private liability.

■ This brings us to the question: if the University were a private corporation which had a paid employee whose responsibility it was to oversee work to be done, with authority to appoint unpaid volunteer officials to assist in the work to be done (here, the conduct of the track meet and the shot-put event) and such paid employee was negligent in the performance of his appointed duties, would the private corporation be liable under the doctrine of *respondeat superior* for the negligence of the appointed, unpaid volunteer in carrying out his appointed duties? We hold that liability does exist under such circumstances. *El Paso Laundry Company v. Gonzales,* 36 S.W.2d 793 (Tex.Civ.App.1931, writ dism'd), holds that a volunteer worker will have the same status as an employee, whenever the employer:

1. Has a right to direct duties of the volunteer. (Here Price, the paid employee had such right);

2. Has an interest in the work to be accomplished. (The University had such interest—it was promoting an NCAA National Championship meet);

3. Accepts direct or incidental benefit derived from the volunteers' work (such is true here); and

4. Has a right to fire or replace a volunteer (Price had such right under the admissions made by the University).

*See* Restatement of Agency 2d, § 225 (1958); *Eldridge v. Citizens Railway Co.,* 169 S.W. 375 (Tex.Civ.App.1914, no writ). We hold that there would be private liability under the circumstances. Price was a paid University employee charged with the above detailed duties and responsibilities. His appointment of a volunteer who was acting within the scope of his employment in assisting Price to carry out his duties, does not preclude the application of waiver of immunity by the University under section 3 of the Act.

The judgment of the trial court is reversed and this cause is remanded for trial.