Affirmed and Opinion on Remand filed August 22, 2002









Affirmed and Opinion on Remand filed August 22, 2002.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-97-00153-CV

____________

 

TEXAS A & M UNIVERSITY, Appellant

 

V.

 

PAUL A. BISHOP, Appellee

 



 

On
Appeal from the 212th District Court

Galveston County, Texas

Trial
Court Cause No. 94CV0958

 



 

O P I N I O N   O
N   R E M A N D








This appeal arises from a suit for personal injuries suffered
by Paul A. Bishop while portraying AVlad Dracula@ in a play performed by the Texas A
& M University at Galveston Drama Club. 
Texas A & M University (TAMU) challenges the judgment in favor of
Bishop in eleven points of error.  In our
original opinion, we found legally insufficient evidence to support the jury=s findings that Michael and Diane
Wonio, Dr. Stephen Curley, and Dr. Melanie Lesko were employees of TAMU on the
occasion in question.  Therefore, we
reversed and rendered judgment in favor of TAMU.  The supreme court reversed, holding that
legally sufficient evidence supported the jury=s finding that Drs. Curley and Lesko
were employees at the time of the occurrence. 
Bishop v. Texas A & M Univ., 35 S.W.3d 605, 607 (Tex.
2000).  The case was remanded to our
court for review of remaining issues.  We
affirm. 

Facts

In the Spring of 1994, the Drama Club of Texas A & M
University at Galveston decided to perform the play, ADracula@ and a member of the club telephoned
Michael Wonio, a local Galveston actor and director, who had directed previous
Drama Club plays.  Wonio agreed to direct
the play.  His wife, Diane Wonio,
assisted with props and choreography of fight scenes.  In one of the final scenes of the play, the
character of Jonathan Harker impales Vlad Dracula with a knife.  Diane Wonio prepared a stab pad for Bishop,
as Vlad Dracula, to wear during this scene because the Wonios determined that
the scene required use of a real knife. 
The stab pad was strapped to Bishop=s chest with a target visible.  Dennis Rittenhouse, another student, played
the part of Jonathan Harker.  On the
night of the incident in question, Rittenhouse swung the knife, missed the stab
pad, and stabbed Bishop in the chest.  

Bishop was taken by ambulance to a hospital emergency room,
where it was determined that the knife had penetrated Bishop=s lung, causing a pneumothorax, or
collapsed lung.  Bishop remained in the
hospital for eight days.  Bishop
testified that his grade point average declined and he continues to experience
weakness, insomnia, and nightmares. 








Bishop filed this negligence suit against TAMU, Drama Club
faculty advisors, Drs. Stephen Curley and Melanie Lesko, and the Wonios
alleging negligence.  The Wonios settled
with Bishop before trial.  The case was
then tried to a jury only on claims of negligence against the Wonios and Drs.
Curley and Lesko as employees of TAMU. 
The jury found the Wonios and the Drama Club faculty advisors acted as
employees on the night in question and were negligent in the use of tangible
personal property.  The jury awarded
Bishop $350,000 in damages.  After an
off-set for settlement credit, the trial court rendered judgment for $250,000.

Sufficiency of the Evidence of Employee Status

In its first two points of error, TAMU asserts the trial
court erred in overruling its motion for judgment notwithstanding the verdict
and its motion for new trial because there was legally or factually
insufficient evidence to support the jury=s answer to question number one,
regarding which individuals were TAMU=s employees.  Question one asked the jury if Mike and Diane
Wonio, Stephen Curley, and Melanie Lesko, were acting as employees of the
university on the occasion in question. 
In its opinion, the supreme court addressed the issue whether the
evidence was legally sufficient to support the jury=s findings that Drs. Curley and Lesko
were TAMU employees at the time of Bishop=s injury.  Bishop, 35 S.W.3d at 607.  The supreme court found that there was
legally sufficient evidence and thus, held that TAMU could be held liable for
the employees= negligence.[1]  Id. 
Thus, we first address whether the evidence is factually sufficient to
support the jury finding with respect to Drs. Curley and Lesko.

1. 
Drs. Curley and Lesko








In deciding factual sufficiency questions, the appellate
court must review all of the evidence.  Lofton
v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986).  The court may set aside the finding only if
the evidence is so weak as to be clearly wrong and manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986).  Further, when reversing a
trial court's judgment after concluding the supporting evidence is
insufficient, the court of appeals must detail the relevant evidence introduced
at trial and clearly state why the jury's finding is factually insufficient.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex.1986).  The court should
state in what regard the contrary evidence greatly outweighs the evidence
supporting the jury's verdict.  Id.;
Alm v. Aluminum Co. of America, 717 S.W.2d 588 (Tex.1986).

The instructions for jury question one stated that an
employee is not a volunteer, but is a person in the paid service of the
university.  The instruction further
stated an employee is not an independent contractor or a person who performs
tasks, the details of which the university does not have the legal right to
control. 

In Texas, a governmental unit is immune from tort liability
unless the Legislature has waived immunity. 
Dallas County Mental Health & Mental Retardation v. Bossley,
968 S.W.2d 339, 341 (Tex. 1998); Univ. of Tex. Med. Branch v. York, 871
S.W.2d 175, 177 (Tex.1994).  A state
agency such as TAMU shares this governmental immunity.  Lowe v. Tex. Tech Univ., 540 S.W.2d
297, 298 (Tex. 1976).  The Texas Tort
Claims Act provides for a limited waiver of governmental immunity under
specified circumstances.  Id.; Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 1997).  Under the act, a governmental unit may be
held liable for personal injury caused by a condition or use of tangible
personal property if the governmental unit would, were it a private person, be
held liable under Texas law.  Id.
at (2).  A governmental entity can be
held liable for personal injuries only through the acts of its employees.  Dumas v. Muenster Hosp. Dist., 859
S.W.2d 648, 650 (Tex. App.BFort Worth 1993, no writ). 
The Act defines Aemployee@ as a Aperson, including an officer or agent, who is in the paid
service of a governmental unit by competent authority, but does not include an
independent contractor, an agent or employee of an independent contractor, or a
person who performs tasks the details of which the governmental unit does not
have the legal right to control.@ 
Tex. Civ. Prac. & Rem. Code
Ann. ' 101.001(2) (Vernon Supp. 2002).  








The evidence shows that Dr. Curley is employed by TAMU as a
professor of English and head of the Department of General Academics.  Dr. Lesko teaches organic chemistry and is
Assistant Department Head of the Degreed Science Department.  Thus, there was evidence Drs. Curley and
Lesko were paid employees of the university for their academic positions.  Drs. Curley and Lesko also acted as faculty
advisors to the Drama Club.  A number of
witnesses testified that faculty advisors were volunteers and were not paid for
this service.  Volunteers are not
included in the Texas Tort Claims Act definition of Aemployee.@ 
Harris County v. Dillard, 883 S.W.2d 166, 167 (Tex. 1994).  A review of the record reveals no testimony
establishing that the faculty advisors were paid for performing the
non-academic role of faculty advisor to the Drama Club. 

Nontheless, both Curley and Lesko testified that TAMU
encouraged its faculty to serve as advisors and sponsors to student
organizations and activities.  Dr. Curley
agreed that, although serving as a faculty advisor to a student organization is
not a separately paid service to the university, it is a positive addition to
his resume.  Dr. Lesko testified that
additional faculty activities, such as serving as a faculty advisor to student
organizations, are considered by her superiors in her annual review and affect
her compensation, particularly given that she is on a tenure track.  Thus, there is some evidence that the faculty
advisors received a benefit from their service. 


Furthermore, certain policies and procedures of TAMU require
faculty advisors to know the rules pertaining to student organizations, to be
aware of liability issues, and to advise the organization concerning
activities.  All university recognized
student organizations are required to have a faculty advisor.  There was testimony that Drs. Curley and
Lesko, as faculty advisors to the drama club, were responsible for enforcing
TAMU policies, including the university prohibition against guns on
campus.  Thus, through the faculty
advisors, the university had a right of control over the student organization
activities to the extent they followed school policies and procedures.  We find the evidence is factually sufficient
to support the jury finding that Drs. Curley and Lesko were employees of TAMU
at the time of the incident in question. 


 

 








2. The Wonios

TAMU next challenges the legal and factual sufficiency of the
evidence supporting the jury=s findings that Michael and Diane Wonio were employees of
TAMU at the time of the occurrence. 
Having already upheld the jury=s finding that the faculty advisors
were employees, TAMU can be held vicariously liable for the employees= negligence, and therefore, we need
not address the Wonios= status.  Bishop,
35 S.W.3d at 606. 

Instructions on Independent Contractor Status

In point of error three, TAMU claims the trial court erred in
denying appellant=s motions for instructed verdict on the issue of an
independent contractor not constituting a person who is in the paid service of
the unit of government.  In point of
error four, TAMU challenges the trial court=s denial of a requested instruction
regarding the definition of an independent contractor.  Because TAMU only argues that the Wonios were
independent contractors, and we have already held that TAMU can be held
vicariously liable for the negligence of the faculty advisors, we need not
address these issues.  Bishop, 35
S.W.3d at 606.

Negligent Use of Tangible Personal Property

In
points of error five and six, TAMU challenges the jury=s finding in response to question two
that the Wonios[2]
and Drs. Curley and Lesko were negligent. 
Appellant claims there is no evidence, or alternatively, insufficient
evidence, that any of these individuals used the knife that caused the personal
injuries in this case.  In point of error
seven, appellant challenges the trial court=s denial of appellant=s requested instruction 2, which
would have advised the jury that neither negligent supervision nor the
university=s decision whether to develop
policies and procedures constitutes use of tangible personal property.








Under
the Texas Tort Claims Act, Atangible property@ is property that is capable of being
handled, touched or seen.  Robinson v.
City of San Antonio, 727 S.W.2d 40, 43 (Tex. App.BSan Antonio 1987, writ ref=d n.r.e.).  For Ause@ of property to occur under the Act,
one must A>put or bring [the property] into
action or service; to employ for or apply to a given purpose=.@ 
Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 584 (Tex.
1996)(citing Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg, 766
S.W.2d 208 (Tex. 1989)).

The
case law is conflicting in this area.  As
this court has said, A[i]t is technically possible to characterize any imaginable
action as a case involving use of tangible personalty.@ 
Lowe v. Harris County Hosp. Dist., 809 S.W.2d 502, 504 (Tex. App.BHouston [14th Dist.] 1989, no
writ).  For example, Ause@ of tangible property has been held
to include non-use in some cases.  See
Lowe v. Tex. Tech Univ., 540 S.W.2d 297 (Tex. 1976) (failure of Texas Tech
coaching staff to furnish proper equipment found to be tantamount to providing
inappropriate equipment thereby constituting use of tangible property); Robinson
v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169 (Tex. 1989) (failure of MHMR
employees to provide life preserver to patient with epilepsy and occasional
seizures held to be tantamount to providing inappropriate equipment as in Lowe).  More recently, the supreme court has
specifically classified these cases as the Aouter bounds@ of what can be classified as Ause.@ 
Kerrville State Hosp., 923 S.W.2d at 585.  Although both Lowe and Robinson
involve the non-use of property, the court has subsequently asserted that it
did not intend in deciding those cases to allow both use and non-use of
property to result in a waiver of immunity because such a result would
essentially abolish the governmental immunity. 
Id.  Accordingly, the court
has held that the precedential value of Lowe and Robinson is
limited to Aclaims in which a plaintiff alleges
that a state actor has provided property that lacks an integral safety
component and that the lack of this integral component led to the plaintiff=s injuries.@ 
Id.













Bishop
argued in this case that TAMU is liable for the negligent exercise of its
assumption of responsibility for the proper use of tangible personal property,
which in this case was the knife.  This
allegation essentially alleges a failure to properly supervise the students in their
use of tangible property.  The
supreme court has not yet addressed the issue whether negligent supervision can
be a use of tangible property under the statute, but the courts of appeals have
addressed this issue and are split.  Some
intermediate appellate courts have held that a failure to supervise does not
fall within the statutory definition of use of property.  See Laman v. Big Spring State Hosp.,
970 S.W.2d 670 (Tex. App.BEastland 1998, pet. denied)(holding that failure of hospital
staff to supervise sedated patient was not use or condition of tangible
property); Hein v. Harris County, 557 S.W.2d 366 (Tex. Civ. App.BHouston [1st Dist.] 1977, writ ref=d n.r.e.)(negligence of supervisory
employees in creating or permitting the existence of conditions that may have
influenced employee to secure a pistol did not establish sufficient
relationship between supervisory employees and use of the pistol to bring claim
within Tort Claims Act); Gonzales v. Lubbock State Sch., 487 S.W.2d 815
(Tex. Civ. App.BAmarillo 1972, no writ)(allegation of negligent supervision
did not assert that the negligence was in the execution of any formulated
personnel policy for which defendant might be liable).[3]  Other courts, however, have found a use of
property where the allegation was negligent supervision.  See Sem v. State, 821 S.W.2d 411 (Tex.
App.BFort Worth 1991, no writ)(found proof
sufficient to raise a fact issue whether the State retained sufficient control
over the work such that it owed a duty to the contractor=s employees to exercise reasonable
care in its control or supervision of placement of warning signs to protect
highway workers); Smith v. Univ. of Tex., 664 S.W.2d 180 (Tex. App.BAustin 1984, writ ref=d n.r.e.)(finding trial court erred
in granting summary judgment to university where appellant alleged negligent
use of tangible real and personal property in the failure to supervise use of
the real and personal property).  Although the supreme court has not
specifically addressed the question whether negligent supervision constitutes
use of tangible personal property under the statute, the supreme court has
mentioned the Smith case in a subsequent opinion without passing on the
merits of Smith.[4]


In
Smith, the plaintiff was a volunteer official at the shot put
competition and was injured when he was struck in the head by a shot.  664 S.W.2d at 184.  Smith alleged his injury was caused by the
negligence of certain university officials in failing to properly supervise
volunteer officials= use of real and personal property.  Id. 
The court found this raised an allegation of negligence in the use
of tangible personal property under the Tort Claims Act.  Id. 
The court also offered the following analysis regarding supervision of
non-employees:








This brings us to the question: if the University were
a private corporation which had a paid employee whose responsibility it was to
oversee work to be done, with authority to appoint unpaid volunteer officials
to assist in the work to be done (here, the conduct of the track meet and the
shot-put event) and such paid employee was negligent in the performance of his
appointed duties, would the private corporation be liable under the doctrine of
respondeat superior for the negligence of the appointed, unpaid
volunteer in carrying out his appointed duties? 
We hold that liability does exist under such circumstances. 

 

Id. at 190.  This is analogous to the situation presented
here.  The faculty advisors had the
responsibility to oversee the conduct of the Drama Club, at least to the extent
that university policies and regulations were followed.  By failing to supervise the Wonios and the
Drama Club, the university can be held liable.

The
case of Christilles v. Southwest Texas State University, 639 S.W.2d 38
(Tex. App.BAustin 1982, writ ref=d n.r.e.) is also illuminating.  In Christilles, a drama student was
injured when the drinking glass he was holding during a dress rehearsal
shattered and caused extensive nerve and tendon damage.  Id. at 39.  The production was directed by a university
employee who made the decision to use a breakable glass.  Id. 
The court found a use of tangible personal property where the plaintiff
pleaded and proved his Ainjury resulted from the use of property either defective or
inappropriate (use of breakable drinking glass rather than a safer one).@ 
Id. at 41.  Similarly,
Bishop=s pleading and proof of use of a real
knife constituted proof of the use of property inappropriate for the purpose
for which it was used. 

Thus,
we hold that the failure to properly supervise the Drama Club and its use of
stage props (in this case, the knife) is a negligent use of tangible personal
property.  Because Bishop alleged that
TAMU employees were negligent in their supervision of the Drama Club=s use of stage props such as the
knife in this case, this raised an allegation of negligent use of personal
property under the Tort Claims Act. 
Thus, the trial court did not err in denying a requested instruction to
question 2, instructing the jury that the decision to develop or not develop
policies and procedures and negligent supervision do not constitute Ause@ of tangible personal property.  Having found that this allegation is viable,
we next turn to the complaint that the evidence was insufficient to support the
jury=s affirmative finding on this issue.








The
record shows that TAMU encouraged faculty members to act as advisors to student
organizations, such as the Drama Club. 
Policies and procedures at TAMU require faculty advisors to student
organizations to know and enforce university rules, including the university
prohibition against weapons on campus. 
Testimony also showed that faculty advisors were responsible for
advising student organizations so they could make reasonable and prudent decisions
in planning activities.  Finally, there
was testimony that faculty advisors were to attend the meetings or rehearsals
of student organizations when possible. 
In this case, the record shows the faculty advisors never attended any
rehearsals for the play.  Testimony
showed that the university, through its faculty advisors, had a right of
control over the student activities, such as the direction of the play and use
of props in this case.  We find this
evidence sufficient to support the jury=s finding that the faculty advisors
were negligent in supervising the use of tangible personal property. 

In
point of error 8, TAMU claims the trial court erred in denying appellant=s motion for instructed verdict both
of which address the issue that sovereign immunity has not been waived unless
an employee=s use of tangible personal property
proximately causes injury to the plaintiff. 
Under these points, appellant argues that negligent supervision is not a
use of tangible personal property and, therefore, there is no proximate
cause.  Alternatively, appellant argues
that the trial court should have allowed an instruction that negligent
supervision is not a use of tangible property. 
Because we have already held that negligent supervision is a use of
tangible personal property, TAMU=s arguments fail.

Official
Immunity

TAMU
next argues that, if we find the faculty advisors and the Wonios were
employees, then the trial court erred in denying appellant=s requested instruction and in
denying appellant=s motion for instructed verdict on the defense of official
immunity.  Appellee responds that
appellant is not entitled to the defense of official immunity because that
defense is only for claims based on the exercise of governmental discretion.








Case
law states that official immunity may protect state employees who are sued in
their individual capacities, see, e.g., Jackson v. Stinnett, 881 S.W.2d
498, 500 (Tex. App.--El Paso 1994, no writ), and if the employee is protected
from liability by official immunity, the governmental entity retains its
sovereign immunity.  DeWitt v. Harris
County, 904 S.W.2d 650, 653 (Tex. 1995). 
In other words, although official immunity protects state employees from
individual liability, the state entity may benefit from the employee=s official immunity even if the
employee is not sued individually. 
Because the state entity only acts through its employees, it should
benefit from a defense that benefits state employees.  

The
purpose of official immunity is to insulate the functioning of government from
the harassment of litigation, not to protect erring officials.  Kassen v. Hatley, 887 S.W.2d 4, 8
(Tex. 1994).  The elements of the defense
are (1) the performance of a discretionary function (2) in good faith (3)
within the scope of the employee=s authority.  Kassen, 887 S.W.2d at 9; City of
Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  Appellee argues that the defense of official
immunity only applies if the discretionary acts are governmental in
nature.  In support of this argument,
appellee cites City of Columbus v. Barnstone, 921 S.W.2d 268 (Tex.
App.--Houston [1st Dist.] 1995, no writ) and Baker v. Story, 621 S.W.2d
639 (Tex. Civ. App.--San Antonio 1981, writ ref=d n.r.e.).  In Baker, the court noted that Texas
courts distinguish judicial officers, quasi-judicial personnel, and ministerial
functionaries, finding that judicial officers have absolute immunity as long as
they have jurisdiction and that quasi-judicial personnel have immunity as long
as they act in good faith within the scope of their authority.  621 S.W.2d at 644.  Since Baker was decided, however, the
supreme court has provided more guidance regarding the scope of official
immunity.








In
Kassen v. Hatley, the court addressed whether medical doctors who
work for a government institution are entitled to official immunity.  887 S.W.2d at 9.  The court determined that, in the case of
medical personnel, there must be a distinction between governmental and medical
discretion.  Id. at 11.  Thus, the court found that, if the doctor was
exercising purely medical discretion at the time of the injury, official immunity
could not arise.  Id.  The court added that, in making the
determination whether the discretion exercised by the employee is governmental
or not, the courts must focus on the facts of the individual case and the
underlying policies promoted by official immunity.  Id. 
For example, the court implied in Kassen that, if the doctors had
been performing policy-making or administrative responsibilities, not shared by
private-sector doctors, they would have been performing discretionary
governmental functions, entitling them to official immunity.  Id. at 10.

In
this case, there is no claim that the faculty advisors were not performing
discretionary duties; rather, the parties 
disagree over whether these discretionary acts were governmental or not.  Thus, we must decide whether oversight of a
student drama club production is a governmental function or not, taking into
consideration the policy behind official immunity.  As the supreme court has said, A[t]he public would suffer if
government officers, who must exercise judgment and discretion in their jobs,
were subject to civil lawsuits that second-guessed their decisions.@ 
Id. at 8.  The United
States Supreme Court has stated:

[O]fficials of government should be free to exercise
their duties unembarrassed by the fear of damage suits in respect of acts done
in the course of those duties--suits which would consume time and energies
which would otherwise be devoted to governmental service and the threat of
which might appreciably inhibit the fearless, vigorous, and effective
administration of policies of government.

 

Barr v. Matteo, 360 U.S. 564, 571 (1959).








The
supervision of student organizations is a function that is performed by faculty
in both state and private schools.  Even
considering the lofty principles underlying the defense of official immunity,
it is difficult to classify the supervision of student clubs and their productions
as a governmental function distinct from such supervision at non-governmental
institutions.  In Christilles v.
Southwest Texas State University, 639 S.W.2d 38 (Tex. App.--Austin 1982,
writ ref=d n.r.e.), the court found a
professor=s decision to use a real glass,
rather than a non-breakable prop glass, was not a determination of governmental
policy, but was instead the exercise of professional or occupational
discretion, and therefore, official immunity did not apply.  Id. at 43.  Similarly, the Wonios= decision to use a real knife, and
the faculty advisors= negligent supervision of the production, involved
professional or occupational discretion, not governmental discretion.  Therefore, we hold that official immunity is
not applicable to the activities performed by the Wonios and the faculty
advisors under the facts of this case.  

Denial
of Motion to Strike Investigative Report

In
its eleventh and final point of error, TAMU claims the trial court erred in
denying  its motion to strike the
investigative report, or in the alternative, all three versions of the
investigative report.  Harry Stege, the
former police chief at TAMU, investigated the incident and prepared a
report.  The office of the TAMU General
Counsel, requested that Chief Stege revise his report to omit legal
opinions.  Ultimately, Stege prepared
three versions of his report and sent memos to the file regarding the general
counsel=s requests for revisions.  TAMU objected to producing the three versions
of the report in discovery, but was compelled to produce all three
versions.  TAMU filed a motion to protect,
which was denied.  At trial, TAMU filed a
motion to strike the three versions of the report and the memos prepared by
Stege.  This motion was also denied and
all three versions were introduced into evidence.

TAMU
claims that the trial court should have granted its motion to strike on the
grounds that Stege, as a witness, was not qualified to make the conclusions he
makes in the three reports, that the three versions of the report were highly
prejudicial and could have confused the jury, and that the probative value of
the reports was substantially outweighed by the danger of undue prejudice,
confusion of the issues, or misleading the jury.  The only authority cited by TAMU under this
point of error is Tex. R. Evid. 403.








Appellee
responds that TAMU has waived any possible error by the following acts: (1) not
objecting to plaintiff=s exhibit eight, the recommendations attached to Chief Stege=s report, and (2) publishing Chief
Stege=s recommendations to the jury by
leaving them in plain view of the jury while questioning witnesses.  The record reflects that before Plaintiff=s Exhibit 7, the reports, was
admitted into evidence TAMU=s counsel objected on the grounds stated in their motion to
strike and on the following grounds: (1) it was prepared in anticipation of
litigation; (2) it was contrary to the Texas Tort Claims Act; (3) it is not
supported by the pleadings; (4) it deals with discretionary governmental
evidence; and (5) it is irrelevant because it does not relate to tangible
personal property.  The trial court
overruled the objections and Exhibit 7 was admitted.  

TAMU=s counsel cross-examined Chief Stege
about the reports and omissions from the original report.  Following this cross-examination, TAMU=s counsel approached the bench
regarding Plaintiff=s Exhibit 8, Chief Stege=s recommendations based on the
reports.  TAMU=s counsel stated she did not waive
her objection to the recommendation page. 
Appellee=s counsel argued that TAMU had opened the door about
everything taken out of the report and had insinuated that nothing omitted from
the original report was damaging to TAMU. 
Appellee=s counsel claimed that, by doing this, TAMU had waived its
objection.  Appellee=s counsel further argued that TAMU=s counsel had published the
recommendation page to the jury and had waived objection to that as well.  The trial judge ruled that TAMU had waived
its objection.

In
its brief, TAMU does not mention the trial judge=s ruling regarding waiver and makes
no argument about waiver.  When a party
itself introduces evidence that is otherwise improper, or permits the evidence
to be introduced, error is waived.  McInnes
v. Yamaha Motor Corp. U.S.A., 673 S.W.2d 185, 188 (Tex. 1984).  Thus, TAMU waived any objection to Plaintiff=s Exhibit 8, the recommendations
page.  It is unclear, however, whether
the trial judge=s ruling also concerned Plaintiff=s Exhibit 7, Chief Stege=s reports.








The
decision to admit or exclude evidence is committed to the discretion of the
trial court and is reviewed for abuse of that discretion.  City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995).  However, if
an appellant introduced the same evidence or evidence of a similar character to
that he is challenging, his objection is waived.  See McInnes, 673 S.W.2d at 188.  Certainly, by publishing Exhibit 8 to the
jury, TAMU waived any objection to that exhibit, but the publishing of Exhibit
8 waived objection to Exhibit 7 only if it is evidence of a similar character
to that in Exhibit 7.  After reviewing
these two exhibits, we find that, although the two exhibits are somewhat
similar in character, there are major substantive differences.  Exhibit 7 includes the three versions of
Chief Stege=s report, which discusses what
happened and Stege=s conclusions regarding wrongdoing by certain personnel and
recommendations to prevent future incidents. 
Exhibit 8 is merely a list of Chief Stege=s recommendations.  Thus, the two exhibits overlap only regarding
recommendations for changes to be instituted that could prevent future
incidents.  Because  Exhibit 7 contains much more information, we
cannot say that introduction of Exhibit 8 to the jury necessarily waived any
objection to Exhibit 7.  Thus, we find no
waiver of TAMU=s objections to Exhibit 7 merely
because TAMU=s counsel published Exhibit 8 to the
jury.

TAMU
also argues that Exhibit 7 should not have been admitted because it was
irrelevant and prejudicial, and because Chief Stege was not qualified to make
the conclusions he made in the reports. 
These were also grounds raised in the motion to strike.  At the time appellee offered Exhibit 7 for
admission, TAMU objected to the evidence on the grounds raised in its motion to
strike and on other specified grounds.  

Evidence
is relevant if it tends Ato make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.@  Tex. R. Evid. 401.  Exhibit 7 is clearly relevant in that it
describes interviews with all of the persons involved, discusses school
policies, and offers Chief Stege=s conclusions and
recommendations.  Furthermore, there is
little merit to TAMU=s claim that Chief Stege is unqualified.  In its brief, TAMU does no more than assert
this conclusion.  No analysis or
authority is offered for this claim. 
Obviously, at the time TAMU officials asked Chief Stege to produce a
report they must have thought he was qualified to do so.  The record shows that before Chief Stege was
chief of police at TAMU, he was the former Police Chief in Tulsa,
Oklahoma.  Thus, we find the evidence is
relevant.








Lastly,
TAMU claims the evidence should not have been admitted because it was
prejudicial under Rule 403.  When a party
objects to evidence under Rule 403, the trial court must conduct a balancing
test, weighing the danger of prejudice against the probative value of the
evidence.  Waldrep v. Texas Employers
Ins. Ass=n,
21 S.W.3d 692, 703 (Tex. App.--Austin 2000, pet. denied).  Even if the trial court=s decision constituted error, the
judgment will not be reversed unless the error probably caused rendition of an
improper judgment.  Tex. R. App. P. 44.1.  In making this determination, the appellate
court must review the entire record.  City
of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995).  Reversible error in connection with
evidentiary rulings usually is not found unless the appellant can demonstrate
that the whole case turns on the particular evidence admitted.  Id. at 753-54.  

We
find no reversible error here.  Appellant
makes no argument why this evidence was prejudicial and our review of the
reports shows nothing that was not admitted by testimony during the trial.  Thus, even if it were error to admit this
evidence, the admission of this evidence was not harmful.

Conclusion

Having
found factually sufficient evidence to support the jury=s finding that the faculty advisors
were employees of TAMU and that the actions of the advisors constituted
negligent use of tangible personal property, we uphold the jury=s findings in this regard.  We further uphold the trial court=s admission of Chief Stege=s reports and the trial court=s determination that official immunity
is inapplicable in this case. 
Accordingly, we affirm the trial court=s judgment.

 

 

/s/        Paul C. Murphy

Senior Chief Justice

 

 

 

 

Judgment rendered
and Opinion on Remand filed August 22, 2002.

Panel consists of
Justices Hudson, Edelman, and Senior Chief Justice Murphy.[5]

Publish C Tex.
R. App. P. 47.3(b).











[1]   Because the
supreme court has held that the evidence is legally sufficient to support the
finding that Drs. Curley and Lesko were employees at the time of Bishop=s injury, the supreme court made an even broader
conclusion, holding that ATAMU is liable for the faculty advisors= negligent use of tangible personal property.@  Id. at
606 (emphasis added).  Despite this
statement by the supreme court, we must first consider  the issues of factual sufficiency of the
evidence supporting the finding of employee status, negligence, and proximate
cause before concluding that TAMU is indeed liable. 





[2]   As discussed
in previous sections of this opinion, we have upheld the jury finding that the
faculty advisors were employees of TAMU and thus, TAMU can be held vicariously
liable for their negligence.  35 S.W.3d
at 606-607.  Accordingly, we need not
address these issues as to the Wonios. 





[3]   TAMU also
cites to Garza=s Estate v. McAllen Indep. Sch. Dist., 613 S.W.2d 526 (Tex. Civ. App.BBeaumont 1981, writ ref=d
n.r.e.) and Naranjo v. Southwest Indep. Sch. Dist., 777 S.W.2d 190 (Tex.
App.BSan Antonio 1989, writ denied).  Both of these cases are distinguishable
because they involved allegations against school districts and school district
liability is limited to torts involving the use of motor vehicles.  Tex.
Civ. Prac. & Rem. Code Ann. ' 101.051
(Vernon 1997).





[4]     In Harris
County v. Dillard, 883 S.W.2d 166 (Tex. 1994), the majority distinguished Smith
as a case in which liability was predicated on the actions of a paid university
employee and not on the actions of a volunteer. 
Id. at 167.  Smith,
however, does address the actions of a volunteer and finds that the university
could be liable for the actions of the volunteer because he was appointed by
the employee to carry out the duties of the paid state employee.  Smith, 664 S.W.2d at 190.  The Dillard dissenting justices note
the majority=s misreading of Smith and one of the dissenting
justices, Justice Spector, states that the majority=s discussion of Smith implies that liability
for a volunteer=s actions could be predicated on a claim of negligent
supervision.  Dillard, 883 S.W.2d
at 170 (Spector, J., dissenting).  Based
on this, Justice Spector observes that the majority might have found liability
if the plaintiff had simply pled negligent supervision; however, Spector notes
that prior case law suggests that supervision may be a discretionary duty for
which no liability can attach.  Id.
(citing County of Brazoria v. Radtke, 566 S.W.2d 326 (Tex. Civ. App.BBeaumont 1978, writ ref=d
n.r.e.)).  Spector adds that until the
issuance of the Dillard majority, prior case law appeared unfavorable
toward a claim for negligent supervision. 
Dillard, 883 S.W.2d at 170. 
The majority responded to Spector=s
statements, including the following remarks:

 

Justice Spector=s
dissent is ambivalent about the importance of Smith to the present
case.  At first, the dissent claims that Smith
provides plaintiffs= arguments, Aa
reasonably strong footing; in the end, the dissent acquiesces in the view that Smith
is erroneous.

. . . .

Assuming Smith was rightly decidedBan issue on which we venture no opinionBit provides no support for plaintiffs= claims in the present case.

 

Id. at 167
n.2





[5]   Senior Chief
Justice Murphy sitting by assignment.